## PEOPLE OF PORTO RICO *v.* ROSALY Y. CAS-TILLO.

### APPEAL FROM THE SUPREME COURT OF PORTO RICO.

No. 145. Submitted January 24, 1913.—Decided February 24, 1913.

The government of Porto Rico cannot be sued without its consent.

The government of Porto Rico, as established by the Organic Act, with some possible exceptions, comes within the general rule exempting a government sovereign in its attributes.

That government of Porto Rico, as established by the Organic Act of April 12, 1900, is a strong likeness of that established for Hawaii which has immunity from suit. *Kawananakoa* v. *Polyblank*, 205 U. S. 349.

The provision in § 7 of the Organic Act of Porto Rico that the people of Porto Rico shall have power to sue and be sued is not to be construed as destroying the grant of sovereignty given by the act itself.

Like words may have one significance in one context and a different signification in another.

In construing an organic act of a Territory this court will consider that Congress intended to create a government conforming to the American system of divided powers—legislative, executive and judicial—and did not intend to give to any one branch of that government power by which the government itself so created could be destroyed.

The words "to sue and be sued" as used in § 7 of the Organic Act of Porto Rico, when construed in connection with the grant of governmental powers therein contained, amount only to a recognition of a liability to be sued in case of consent duly given.

16 Porto Rico, 481, reversed.

THE facts, which involve the construction of § 7 of the Organic Act of Porto Rico and whether the Government of that Island can be sued without its consent, are stated in the opinion.

*Mr. Felix Frankfurter* and *Mr. Wolcott H. Pitkin, Jr.*, Attorney General of Porto Rico, for appellants:

Although this is an action at law, as it was not tried by jury it is rightly brought here by appeal, according to the provisions of § 35 of the act of April 12, 1900, 31 Stat. 85, and § 2 of the act of April 7, 1874, 18 Stat. 27. *Garzot v. de Rubio*, 209 U. S. 283; *Murphy v. Ramsey*, 114 U. S. 15, 35.

The body politic known as The People of Porto Rico, by virtue of the government established by its Organic Act, enjoys exemption from suit without its own permission, which extends to this case. *Elkins v. Porto Rico*, 5 P. R. Fed. Rep. 103; *Richmond v. Porto Rico*, 99 N. Y. Supp. 743.

*Kawananakoa v. Polyblank*, 205 U. S. 319, controls this case, for there is no difference whatever in the structure of their governments, in the actual exercise of governmental powers, and the relation of independence of the local governments to the National Government, between Hawaii and Porto Rico.

The Organic Act of Porto Rico created a self-governing sovereignty for purposes of immunity from suit without consent.

The purpose of the act is to give local self-government, conferring an autonomy similar to that of the States and Territories. *Gromer v. Standard Dredging Co.*, 224 U. S. 362, 370.

Only for political reasons has the technical designation of "Territory" been withheld by Congress—but every attribute of sovereignty that any of the Territories possess has been conferred. *Kopel v. Bingham*, 211 U. S. 468, 476; *In re Kopel*, 148 Fed. Rep. 505, 507.

Thus far United States citizenship, in name, has been withheld, but the granting of it, in view of the status of Porto Rico has been urged by the Executive and a bill conferring it has passed the House of Representatives and is now before the Senate (see H. Rep. 20048, 62d Cong., 2d sess.; H. Rep. 341, 62d Cong., 2d sess.; President's message of December 6, 1912, and Annual ·Report· of Secretary of War for 1911, p. 40).

Porto Rico's immunity from suit, by virtue of its Organic Act creating a sovereign body politic, was not limited by the specific provision conferring upon the Island "power to sue and be sued as such." Section 7 of the Foraker Act does not amount to a blanket authority to sue *ad libitum* the government established by the Organic Act. Nor is it for Porto Rico not only a Tucker Act of March 3, 1887, 24 Stat. 505, giving specific permission of the sovereign (using the term in the qualified sense as covering the sovereign's immunity here under discussion) to be sued in a definite class of cases and in a manner and subject to the restrictions that it may see fit to impose (see *Reid* v. *United States,* 211 U. S. 529, 538), but an unlimited permission, subjecting the sovereign to the same amenability to suit as its individual citizens.

The provision merely confers the attribute of individuality and does not enlarge the jurisdiction of courts. *Bank* v. *Deveaux,* 5 Cranch, 61, 85–86.

Section 7 merely labeled the sovereignty created by the whole scope of the Foraker Act, and did not impair the sovereignty created by the rest of that act.

Consent to be sued has been granted by the Porto Rican legislature in certain cases not here applicable (§ 404, Political Code of Porto Rico, and sub-sec. 5 of § 1804 of the Civil Code, in connection with § 80 of the Code of Civil Procedure.

No appearance for appellee.

MR. CHIEF JUSTICE WHITE delivered the opinion of the court.

The appellee was plaintiff in the first instance. The defendants were The People of Porto Rico (the Government of the Island) and several named individuals. Recovery was sought of property in possession of the defendants and for rents and profits. The individual defendants defaulted. The Government defended and from a judgment ousting it from the property and for rents and profits appealed to the Supreme Court. The court, giving its reasons for affirmance, thus stated the only issue presented and which was decided: "The appeal was taken by The People of Porto Rico, and the only ground alleged in support thereof was that, inasmuch as The People of Porto Rico could not be sued without its consent, and such consent not appearing to have been given in this case, the District Court had acted without jurisdiction, and the judgment rendered by it was null and void." The court did not overlook the importance of the question, as is shown by its careful and perspicuous opinion. A member of the court fully stated his reasons for dissenting. On this appeal, taken by The People of Porto Rico, the case having been tried without a jury, the question for decision is narrower than would seem to be the case regarding alone the general terms in which the question is mentioned in the passage previously quoted from the opinion of the court below.

It is not open to controversy that aside from the existence of some exception the government which the organic act established in Porto Rico is of such nature as to come within the general rule exempting a government sovereign in its attributes from being sued without its consent. In the first place, this is true because in a general sense so far as concerns the frame work of the Porto Rican government and the legislative, judicial and executive authority with which it is endowed there is, if not a com-

plete identity, at least in all essential matters, a strong likeness to the powers usually given to organized Territories and moreover a striking similarity to the Organic Act of the Hawaiian Islands (Act of April 30, 1900, chap. 339, §§ 6, 55; 31 Stat. 141, 142 and 150). But as the incorporated Territories have always been held to possess an immunity from suit and as it has been moreover settled that the government created for Hawaii is of such a character as to give it immunity from suit without its consent, it follows that this is also the case as to Porto Rico. *Kawananakoa* v. *Polyblank*, 205 U. S. 349, 353. This, moreover, is additionally beyond question because in considering the nature and character of the government of Porto Rico in *Kopel* v. *Bingham*, 211 U. S. 468, it was said (p. 476): "It may be justly asserted that Porto Rico is a completely organized Territory, although not a Territory incorporated into the United States, and that there is no reason why Porto Rico should not be held to be such a Territory. . . ." Besides, in *Gromer* v. *Standard Dredging Company*, 224 U. S. 362, in considering the subject and giving due weight to "the precaution against abuse" of the Porto Rican legislative power and after calling attention to the reservation made by Congress of the right to repeal any Porto Rican act of legislation, it was nevertheless declared (p. 370): "The purpose of the act is to give local self-government, conferring an autonomy similar to that of the States. . . ." There being, then, no doubt that immunity from suit without its consent is necessarily inferable from a mere consideration of the nature of the Porto Rican government, the issue is whether there is any ground which removes Porto Rico from the general rule. That such an exception is the result of the concluding portion of § 7 of the Organic Act was the sole basis upon which the court below rested its conclusion and the correctness of that view is the only issue we are called upon to decide.

The section in question, § 7, is the one which enumerates the classes of persons who by the act are made constituent elements of the government for which the act provides, and after making such enumeration the section declares that the persons embraced in its provisions "shall constitute a body politic under the name of The People of Porto Rico with governmental powers as hereinafter conferred and with power to sue and be sued as such."

Unquestionably the provision disconnected from its context would sustain the conclusion that there exists a general liability to be sued without reference to consent. Indeed, the words to sue and be sued are but a crystallized form of expression resorted to for the purpose of aptly stating the right to sue and the liability to be sued, which springs from a grant of corporate existence, private or public. But this does not solve the question here arising, which is the meaning of the words in the act under consideration, for it may be that like words may have one significance in one context and a different signification in another. And this is made clear by bearing in mind that as usually applied the words to sue and be sued but express implications as to the existence of powers flowing from the matter to which they relate, while here if the words have the meaning insisted on they serve, if not to destroy, at least to seriously modify or greatly restrict the grant of powers conferred by the organic act. The destructive potency of the words if given the meaning insisted upon is self-evident, since the claim here is that they denature the government created by the organic act by depriving it of an immunity which has been frequently decided by this court would otherwise necessarily arise from the scope of the powers conferred. As, however, a full appreciation of the operation of the words, if they are interpreted as insisted upon, affords the truest means of ascertaining their real signification, we do not rest content with that which is self-evident, but pursue the subject further.

The proposition is that by giving to the words the meaning insisted upon it has come to pass that the existence of claims of every kind and nature, whether in contract or in tort against the government, is a matter for exclusive judicial determination. But as the essence of paramount judicial power over a subject confers the authority and imposes the duty to enforce a judgment rendered in the exercise of such power (*Gordon* v. *United States*, 117 U. S. 697, 702; *La Abra Silver Mining Co.* v. *United States*, 175 U. S. 423, 457; *District of Columbia* v. *Eslin*, 183 U. S. 62, 65), it follows that the contention is that the government created by the Organic Act is not the character of government which this court has declared it to be in the cases to which we have referred, that is, one founded upon the American system, but is, on the contrary, one in which the legislative power concerning claims of every kind against the government is subordinated to the judicial. That such was the view taken by the court below of the result of the meaning which it affixed to the clause in question was plainly stated in the opinion as follows (16 Porto Rico, 487):

"The presence of the words 'with power to sue and be sued,' in our Organic Act, cannot be ascribed to an oversight of Congress, but, on the contrary, it may be presumed that Congress employed them having in mind the obligations contracted in the Treaty of Paris, and with the desire of giving to the persons included in its stipulations ready access to courts of justice, against any invasion of their rights by governmental action. And indeed, there should be no fear of entrusting to the courts the protection, not only of the persons mentioned in the treaty, but of any other persons, without excluding The People of Porto Rico. This has been demonstrated sufficiently by an experience of more than ten years."

In view, however, of the terms of the Organic Act, of the prior decisions recognizing that the purpose of Con-

gress in adopting it was to follow the plan applied from the beginning to the organized Territories by creating a government conforming to the American system with defined and divided powers, legislative, executive and judicial, in further view of the fact that the exercise of the judicial power here claimed would be destructive of that system, we are of opinion that it cannot be supposed that Congress intended by the clause in question to destroy the government which it was its purpose to create. In a sense the words "to sue and be sued," applied, as they normally have been, in grants of private or public charters, are redundant, since they but express the existence of powers which would naturally be implied. It may be true also to say that if they be likewise confined in the case before us they will also be in a sense redundant. Despite this, we think they should be construed with reference to the powers conferred by the provisions to which they relate, and therefore cannot be treated as destructive of the authority otherwise conferred by the act. Thus interpreting the clause, it is but an expression of the power to sue arising from the terms of the Organic Act and a recognition of a liability to be sued consistently with the nature and character of the government, that is, only in case of consent duly given. The words, "shall have the governmental powers hereinafter conferred and with the power to sue," etc., exclude the possibility in reason of holding that the right to sue and be sued which was given "and with," that is, because of or along with the powers conferred—was intended to or does distort or limit the powers of government which the act conferred.

*Reversed.*