ALEJANDRO LABORDE, Plaintiff and Appellee, *v.* MUNICIPALITY OF ISABELA, Defendant and Appellant.

No. 3881.   Argued February 6, 1928.—Decided April 25, 1928.

*George C. Butte,* Attorney General, *J. A. López Acosta* and *R. A. Gómez,* Assistant Attorneys, for the intervenor.

Mr. Justice Wolf delivered the opinion of the court.

The Municipality of Isabela made a contract with Alejandro Laborde whereby the latter was to render services in the execution of a loan of money to be obtained by the said municipality and secured by bonds. To this effect on the 29th of October, 1923, the municipality passed an ordinance which was approved by the Executive Council of Porto Rico, as required by law. The amount agreed to be paid was $5,000 and the payment was to become due as soon as the money from the loan came into the municipal treasury. When the claim was presented to the municipality the latter refused payment solely on the ground that it was unable to obtain the authorization to that effect from the Auditor of Porto Rico. The District Court of Aguadilla reviewed the facts, found that the services had been rendered and that the municipality had obtained the benefit of his services, and in an ordinary suit for the recovery of money rendered judgment for the plaintiff. The municipality appealed and in a brief filed in this court alleged various grounds of error, some of which were considered or partially considered in the case of *Costas Purcell* v. *Municipality of Las Marías,* 37 P.R.R. 18. In passing we may say that in that case, in overruling by a divided court a motion for rehearing presented by the Attorney General of Porto Rico as *amicus curiae,* we did so with an interior reserve that with a full court we would sometime review again some of the questions raised in the case. The majority of the court was of the opinion, among other things, that the attempted reconsidera-

tion came too late after the case had been fully decided on its merits in this court.

In the present case the appellant alleged in its brief the necessity for the approval of the account of the plaintiff by the Auditor of Porto Rico. The appellee attempted to reply to this contention. The case had not been heard by this court on its merits when on the 16th of December, 1927, the Attorney General of Porto Rico filed a motion of intervention in the name of the Auditor of Porto Rico. The motion was heard by a full court on the 6th of February, 1928.

Perhaps the right of the auditor to intervene at this stage of the proceeding could be decided on a consideration alone of the rights of a party to be added to a record after the case has reached the Court of Appeals. We have, however, another case pending involving the right of the Auditor to be made a party in the lower court. If he has no right to intervene in a case like the present in the lower court, a decision to that effect would also dispose of this motion. We have thought it advisable to make an attempt with a full court to consider, superficially at least, the rights of the Auditor of Porto Rico as well as his right to intervene as a party in the lower court. In the case of *Pérez* v. *District Court of Arecibo,* an application for mandamus against the Auditor of Utuado, the District Court of Arecibo ordered or permitted such intervention. The case was brought here by writ of certiorari No. 585 and was heard by four of the judges of this court. We shall first consider the rights of the Auditor of Porto Rico.

The legislation to be considered is the Act of Congress of March 2, 1917, known as the Jones Act. While the Constitution of the United States applies to Porto Rico to a certain extent, and the Foraker Act likewise so far as it has not been superseded, the principal basis of constitutional law is the said Jones Act. Sections 20 and 21 of that Act are to be construed. They are as follows:

"Sec. 20.—That there shall be appointed by the President an auditor, at an annual salary of $5,000, for a term of four years and until his successor is appointed and qualified, who shall examine, audit, and settle all accounts pertaining to the revenues and receipts, from whatever source, of the government of Porto Rico and of the municipal governments of Porto Rico, including public trust funds and funds derived from bond issues; and audit, in accordance with law and administrative regulations, all expenditures of funds or property pertaining to or held in trust by the government of Porto Rico or the municipalities or dependencies thereof. He shall perform a like duty with respect to all government branches.

"He shall keep the general accounts of the government and preserve the vouchers pertaining thereto.

"It shall be the duty of the auditor to bring to the attention of the proper administrative officer expenditures of funds or property which, in his opinion, are irregular, unnecessary, excessive, or extravagant.

"In case of vacancy or of the absence from duty, from any cause, of the auditor, the Governor of Porto Rico may designate an assistant, who shall have charge of the office.

"The jurisdiction of the auditor over accounts, whether of funds or property, and all vouchers and records pertaining thereto, shall be exclusive. With the approval of the governor, he shall from time to time make and promulgate general or special rules and regulations not inconsistent with law covering the methods of accounting for public funds and property, and funds and property held in trust by the government or any of its branches; *Provided*, That any officer accountable for public funds or property may require such additional reports or returns from his subordinates or others as he may deem necessary for his own information and protection.

"The decisions of the auditor shall be final, except that appeal therefrom may be taken by the party aggrieved or the head of the department concerned within one year, in the manner hereinafter prescribed. The auditor shall, except as hereinafter provided, have like authority as that conferred by the law upon the several auditors of the United States and the Comptroller of the United States Treasury, and is authorized to communicate directly with any person having claims before him for settlement, or with any department, officer, or person having official relations with his office.

"As soon after the close of each fiscal year as the accounts of said year may be examined and adjusted, the auditor shall submit

to the governor an annual report of the fiscal concerns of the government, showing the receipts and disbursements of the various departments and bureaus of the government and of the various municipalities, and make such other reports as may be required of him by the governor or the head of the executive department of the Government of the United States, to be designated by the President as herein provided.

"In the execution of his duties the auditor is authorized to summon witnesses, administer oaths, and to take evidence, and, in the pursuance of these provisions, may issue subpoenas and enforce the attendance of witnesses.

"The office of the auditor shall be under the general supervision of the governor and shall consist of the auditor and such necessary assistants as may be prescribed by law.

"Sec. 21.—That any person aggrieved by the action or decision of the Auditor in the settlement of his account or claim may, within one year, take an appeal in writing to the Governor, which appeal shall specifically set forth the particular action of the Auditor to which exception is taken, with the reason and authorities relied on for reversing such decision. The decision of the Governor in such case shall be final, subject to such right of action as may be otherwise provided by law."

In the first paragraph of section 20 it is provided that the auditor shall "examine, audit and settle all accounts pertaining to the revenues and receipts, from whatever source, of the government of Porto Rico and of the municipal governments of Porto Rico, including public trust funds and funds derived from bond issues." Although the three words are to a certain extent synonymous, the word "settle" is the strongest word used.

The word, nevertheless, is one susceptible of various meanings. It sometimes signifies a final determination and frequently means to fix the basis of the accounting between two parties without necessarily determining the essential rights between them. It sometimes only establishes a presumption of exactitude. *Fajardo Sugar Co.* v. *Holcomb,* 16 Fed. (2nd) 92, 95; *Auzerais* v. *Naglee,* 70 Cal. 60, 67, 15 Pac. 371, 373; *City of Longview* v. *Capps,* 123 S. W. (Tex.)

160, 162; 35 Cyc. 1442 *et seq.;* 15 C. J. 516; 39 Cyc. 761. Construing the same section the Circuit Court of Appeals in *Fajardo Sugar Co.* v. *Holcomb* said: "To approve or disapprove a disbursement is not to settle the legal basis of that disbursement." We shall analyze that case a little further on. Words like "settle," "adjust" and "audit" are of ambiguous meaning and their determination depends upon the context in which they are used.

Of the interest, nexus or relation that the auditing official of a state may have to another citizen or claimant, little light can be thrown from the mere use of the word "auditor." It is similarly an ambiguous word. No case has been cited to us where in filing an ordinary suit against the government or any of its subdivisions the interest of the auditor was such that he was a necessary party to the suit. The indications are to the contrary. One of the best considered cases is from the State of Washington. *State* v. *Clausen,* 44 Wash. 427, 87 Pac. 498. Subdivision 1 of section 134, Ballinger's Ann. Codes & Stat., provided that it should be the duty of the State Auditor "to audit, adjust and settle all claims against the State, except only such claims as may be expressly required by law to be audited and settled by other officers and persons." The case did not turn on the exception mentioned. The claimant was one who had rendered services to the state as an expert to determine the cost of the construction of railroads. The court held, perhaps barring fraud, that the railroad commission was the only one proper to decide the claim of the petitioner. In the State of Washington, whether the officer has a discretion or not, he may be compelled to perform a duty to a citizen presenting a claim; that the only question before the court was the rightfulness of the claim. It was conceded *arguendo* that the same liberal practice would permit the State Auditor to interpose any defense if sued directly. In other words, there was nothing in the position of the auditor that gave him such a controlling interest as to make his decision determinative.

A mention was made of *People* v. *Stephens,* 71 N. Y. 549, where the court said:

"There is not one law for the sovereign and another for the subject; but, when the sovereign engages in business and the conduct of business enterprises, and contracts with individuals, although an action may not lie against the sovereign for a breach of the contract, whenever the contract in any form, comes before the courts, the rights and obligations of the contracting parties must be adjusted upon the same principles as if both contracting parties were private persons. Both stand upon equality before the law, and the sovereign is merged in the dealer, contractor and suitor."

A writ of mandamus was ordered to issue against the Auditor of the State of Washington. See also *State ex rel. Washington Pav. Co.* v. *Clausen,* 90 Wash. 450, 452.

Claims arise against the United States. Congress at various times has provided remedies for these claims, sometimes by suits in the Court of Claims and sometimes independently in the Federal Courts. Concurrently with rights to come into some courts, Congress also has established an auditing office as a branch of the Treasury Department and has also established a Comptroller of the Treasury. In certain cases the actions of these officers finally dispose of the claims. We shall not pretend to examine all the duties devolved upon these officers. In various statutes, however, these officers are given power to settle claims. In some of the statutes a right to resort to the courts is reserved. In some of them the right is not so clearly outlined. The general policy of the United States, both by its legislation and by decisions of the courts, has not generally made the rights of citizens to collect claims against the United States depend solely upon the action of these officers. The courts have not done so unless such an intention was made evident by the statute itself. The disposition of the Supreme Court of the United States is to regard general words in a statute as making decisions of the auditing officers final as being final in the executive sense. *U. S.* v. *Harmon,* 147 U. S. 268;

*Smithmeyer* v. *U. S.,* 147 U. S. 342; *U. S.* v. *Foreman,* 48 Pac. (Okla.) 92; *U. S.* v. *Babcock,* 250 U. S. 331 and cases; *St. Louis, Brownsville & Mexico Ry. Co.* v. *U. S.,* 268 U. S 170, 174. In the last-mentioned case the claim was for a transportation of soldiers and a denial of the claim by the auditing officers of the Treasury. Said the court: "No action of these officials can bar the right of a claimant to have the Court of Claims determine whether he is entitled to recover under a contract with the government."

*State ex rel. Savre* v. *Moore,* 25 L.R.A. 774, was a case where the court by a majority vote decided that a particular appropriation made by legislature to pay for the services of an attorney was in the nature of a gratuity and hence would not fall within the purview of the auditor's revision as provided by the Constitution of Nebraska. It is, however, apparent from the decision that in Nebraska an appeal lies from the action of the auditor to the courts.

We revert to the Organic Act. Thereunder not only are the rights and duties of the auditor defined, but the local legislature is given broad powers under section 37. We copy it as follows:

"That the legislative authority herein provided shall extend to all matters of a legislative character not locally inapplicable, including power to create, consolidate, and reorganize the municipalities so far as may be necessary, and to provide and repeal laws and ordinances therefor; also the power to alter, amend, modify, or repeal any or all laws and ordinances of every character now in force in Porto Rico or municipality or district thereof in so far as such alteration, amendment, modification, or appeal may be consistent with the provisions of this Act.

"No executive department not provided for in this Act shall be created by the Legislature, but the Legislature may consolidate departments, or abolish any department, with the consent of the President of the United States."

Both under the Act and before it the Legislature created municipalities with power or capacity to make contracts and to sue and be sued. Such a power to sue and be sued is

inherent in a municipal corporation, once it is created without a limitation on its capacity. *People v. Rosaly,* 227 U. S. 270, 277. On the inherent capacity to be sued: Dillon on Municipal Corporations, par. 771, 5th edition, page 1139; 43 C. J. 191 et seq.; 19 R.C.L. 337; 14 a C. J. 785; *Board of Park Commissioners v. Nashville,* (Tenn.) 185 S. W. 700.

*People v. Rosaly, supra,* is a case that marks the exception to the rule. A sovereign or quasi-sovereign may not be sued without its own consent, but any other body politic or corporation may be.

With these antecedents we can not find that it was the intention of Congress to create a special or independent tribunal in the person of the Auditor of Porto Rico. The only words in the acts to this end are as follows: "The decisions of the auditor shall be final, except that appeal therefrom may be taken by the party aggrieved or the head of the department concerned within one year, in the manner hereinafter prescribed." But we see therein no disposition to deprive a citizen who makes a contract with a municipality of his right to sue, or of his right to sue without first having recourse to the auditor. The other words seen in the section tend to show that the rights or decisions of the auditor are similar to those of the auditors of the United States or the Comptroller of the Treasury.

*Fajardo Sugar Co. v. Holcomb,* 16 Fed. (2nd) 92, *supra,* is distinctly pertinent and persuasive, if not controlling. According to the court the gist of the case was whether the Auditor of Porto Rico had under section 20 of the Organic Act power to revise and to reassess taxes already assessed under the statutes enacted by the Porto Rican Legislature. At the time the auditor's position, as taken by the Attorney General of Porto Rico, was twofold. "One, that the Auditor of Porto Rico has the right to audit the accounts of the treasurer; and second, that the Auditor of Porto Rico, as a consequence of that power that he has, has the right to revise any decision of the Treasurer of Porto Rico." Then the court

said: "This amounts to asserting that the auditor is a part—almost a dominant part—of the tax levying and collecting power," and again: "At the outset, we observe that the term 'auditor' does not ordinarily connote power to assess taxes or reverse tax assessments. In general an auditor is 'an officer of the government whose duty it is to examine the acts of officers who have received and disbursed public moneys by lawful authority.' If, under the Organic Act, the Auditor of Porto Rico has, in whole or in part, control over the taxing power we shall expect to find that unusual delegation explicitly stated. We do not find it." Similarly we may say of the right to intervene in contracts or to affect the general liability of a municipality to suits. After reciting sections 20 and 21, *supra,* the court said:

"We are unable to adopt the contention of the Attorney General of Porto Rico, that the auditor's power under this section 20 to 'examine, audit and *settle* all accounts pertaining to the revenues and receipts' means that decisions of the treasurer and other officials charged with the administration of the taxing power are subject to review and revision by the auditor. This is not the natural meaning of the word 'settle,' construed in the light of the context and of the usual duties of an auditor. Doubtless the *accounts* of the treasurer, with relation to the collection of taxes levied in accordance with law, are subject to the auditor's examination and approval or disapproval. But to 'settle an account' is one thing; to determine the legal basis of the account is quite another thing. To settle accounts pertaining to receipts from taxes is not to levy the taxes from which the receipts are derived. To approve or to disapprove a disbursement is not to settle the legal basis of that disbursement. It is the auditor's duty to bring to the attention of the proper administrative officers expenditures 'irregular' or even 'extravagant'—thus becoming a critic of expenditures for which there is elsewhere an element of discretion. But he is not thus vested with the actual powers of other officials dealing with disbursements."

The court then passed on to more general considerations, namely, the right of the Legislature to pass tax laws not subject to review by the auditor, and said:

"The result is that all Porto Rican legislation now on the statute books is—in a very real sense, though indirectly—the output of our federal government. Under such conditions, the court should not lightly assume that the tax acts of. Porto Rico, now contended to be in conflict with section 20 of the Organic Act, are inconsistent and therefore invalid. Doubtless the relation of the Organic Act to the Porto Rican government is, in certain aspects, like the relation of a state Constitution to a state Legislature. *Camuñas* v. *P. R. Ry., etc., Co.,* (C. C. A.) 272 F. 924, 928.

"But the analogy is not complete; for, after all, the Organic Act is nothing but federal legislation, and Porto Rican legislation, approved expressly or impliedly by Congress, has exactly the same import.

\* \* \* \* \* \* \*

"In the light of these explicit provisions, consistent with the general framework of the Porto Rican government, existing under Porto Rican statutes approved by the Governor and impliedly approved by Congress, we can not hold that the auditor is, as is now con·tended, part of the tax levying and administering machinery of Porto Rico."

The court concluded that the auditor, while having certain powers of examination and revision of the acts of other officers, did not have the power to revise and reassess taxes. There is a strong analogy here with regard to the right to revise the acts of the municipality. Unless the municipal-ities are not to have an independent existence, such a power would thwart them at every turn. The power of the auditor when it comes to contracts of a municipality must be considered as merely advisory. It probably is different when the auditor is revising the acts of a certain government officer, not involving contracts executed by municipalities authorized by law.

*Axtmayer* v. *Kessinger,* 32 P.R.R. 841, decides that a person who is with the government suing for a salary must first exhaust his administrative remedies. The writer dissented from that opinion solely on the ground that the petitioner there had not exhausted his administrative remedies. The case, of course, shows that there are certain instances

where the action of the auditor must first be had. There are naturally cases where an action by the auditor is a condition precedent to recovery. There must be necessarily cases in which the action of the auditor is final, but we hold that the action of the auditor can only be advisory when a citizen has made a contract according to law with a municipality.

Again looking at the Act itself, in section 21, after providing for an appeal from the auditor to the Governor, we find the following: "The decision of the Governor in such case shall be final, subject to such action as may be otherwise provided by law." This must mean such rights of action as the Legislature has given or would give, including the right to sue a municipality created by it for a contracted liability.

We might stress a little the fact that the municipalities were subject to suit before the Jones Act was passed and therein Congress showed its intention to respect the laws on our statute books. Section 57 is as follows:

"That the laws and ordinances of Porto Rico now in force shall continue in force and effect, except as altered, amended, or modified herein, until altered, amended, or repealed by the Legislative authority herein provided for Porto Rico or by Act of Congress of the United States; and such legislative authority shall have power, when not inconsistent with this Act, by due enactment to amend, alter, modify, or repeal any law or ordinance, civil or criminal, continued in force by this Act as it may from time to time see fit."

It is evident, therefore, that a citizen does not have to obtain the consent of the auditor to contract with a municipality, as we decided or intimated in *Costas Purcell* v. *Municipality of Las Marías, supra*. At that time our attention had not been drawn to the decision of the Circuit Court of Appeals, *supra*.

We may also draw attention that if a settlement or approval by the auditor was necessary, such a defense could always be interposed by the municipality without making the auditor a party.

We may conceive of three possibilities so far as the posi-

tion of the Auditor of Porto Rico is concerned. He may be an officer, independent of the body politic known as The People of Porto Rico. He may be an officer of The People of Porto Rico, or he may be an officer of the municipality. That he is not such an independent officer we think is definitely settled in *Fajardo Sugar Co.* v. *Holcomb, supra,* and by the other considerations of this opinion. If he acts as an officer of the municipality, then that body can not escape liability by the acts of its own officer. If he acts as an officer of The People of Porto Rico, then it is that entity and not the auditor who has the interest in the suit. We discover no intention on the part of Congress, in giving the Legislature the right to create municipalities, to make the entities so created subject to the immunity from suit that exists in favor of Porto Rico.

While Congress probably had a right to do so, it can not without a more direct intimation be supposed that it took the method outlined in section 20 to put aside the right of a citizen contracting with a municipality to have his controversies settled in a court. The acid test is whether the corporation is or is not responsible independently of the action of the auditor.

If the auditor has any right to be heard and his warrant is still necessary in the case, he can always defend, saying he was not made a party to the suit.

We shall suppose, however, that the auditor was a necessary party to this suit against the Municipality of Isabela. If he was such a necessary party, then the municipality might urge such a lack of parties at the hearing to be had in this case.

The record, however, is made in the court below. On appeal we have no power or authority to add to it. We can only change our records to make them conform to those of the court below. The issues between the parties and the trial court's theory of the trial are made in the district court.

By issues we mean anything that may reasonably be deduced from the pleadings or the proof presented.

The appellate court can not add a party who was not before the court below. The following citation from 3 C. J. 1029, might perhaps remotely seem to the contrary. It reads as follows:

"The practice as to the intervention or addition of new parties in an appellate court is not uniform. In some jurisdictions, the power to allow such intervention or addition is exercised as one inherent in the court or under statutory authority; while in other jurisdictions the power is denied. Under either view it would seem, however, that a necessary party cannot be added after the expiration of the time for commencing the proceeding in error. Where the court has ordered the addition of parties by appellant, he should be allowed a reasonable time for such purpose."

Such decisions as we have examined thereunder show, however, that the words "new parties" almost invariably mean persons who were parties in the court below, but who were not originally brought within the jurisdiction of the appellate court. Some of the cases are substitutions of parties or cases of parties like taxpayers who were constructively parties before the court below. We find no case where an entirely new party who was not directly or constructively before the court could intervene before the appellate court.

The petition of the auditor to intervene will be denied.