**RIORDAN v. FERGUSON, Federal Housing Adm'r (Inter-County Title Guaranty & Mortgage Co., Third-Party Defendant).**

District Court, S. D. New York.

Oct. 21, 1941.

Herbert Noble, Jr., of New York City, for plaintiff.

Mathias F. Correa, U. S. Atty., of New York City (Arnold C. Stream, Asst. U. S. Atty., of New York City, of counsel), for Federal Housing Administrator.

James G. Mitchell, of New York City, for third-party defendant.

CONGER, District Judge.

These are two motions by defendant and third-party defendant (1) to dismiss the complaint on the ground that the court has no jurisdiction of the subject matter of the action, and (2) for summary judgment on the ground that there exists no genuine and triable issue of fact.

The facts of this litigation may be summarized as follows: The plaintiff in the within action is apparently attempting to foreclose a mortgage upon certain lands in Westchester County, New York. The plaintiff's claims are based upon a certain instrument in writing which conditionally transferred title to this and other parcels of real estate to plaintiff's testator. Plaintiff alleges a default under said instrument and that he is therefore entitled to a sale of the premises in satisfaction of the indebtedness expressed in said instrument.

It appears that on June 30, 1924, John J. Riordan, Jr., plaintiff's testator, loaned to the Merchants and Manufacturers Exchange, a New York corporation, the sum of $215,000. As security for his loan he received a negotiable note in that amount and an alleged assignment of certain mortgages in Westchester County, and of certain real estate in said county, as collateral for said note. This instrument was duly recorded.

The decedent and the Merchants and Manufacturers Exchange opened an account with one another, and the accounts between the debtor and creditor show many deposits and withdrawals, payments on account, etc.

In 1928 or 1929, the decedent discovered that a domestic corporation known as Philso Estates, Inc., had purchased from the Merchants and Manufacturers Exchange one of the parcels of real estate assigned to him as collateral security. This parcel was not the real estate involved in the instant litigation, but covered by the same instrument in writing.

When this discovery was made, decedent immediately asserted his lien, and agreed to release the property from his lien in consideration of the payment to him of in excess of $29,000, which Philso did pay and for which they received a release.

Whereupon Philso brought an action against the decedent and the New York Title and Mortgage Company wherein it sought a declaratory judgment based on a policy of title insurance issued by the title company in which no exception was made as to Riordan's lien. The complaint was dismissed in the New York Supreme Court on the ground that a suit for declaratory judgment would not lie. On appeal, the Appellate Division reversed this ruling and returned the action for trial. Philso Estates, Inc., v. Riordan, 240 App. Div. 998, 268 N.Y.S. 265. The action was tried before Mr. Justice Aldrich of the New York

Supreme Court, and his decision[1] (filed November 12, 1934, Westchester County, New York) held that the instrument in question constituted a mortgage and was duly recorded so as to give notice to all persons, and that the indebtedness secured by the mortgage had been paid. The instrument upon which plaintiff is suing in the within action is this same instrument which Judge Aldrich declared to be a mortgage and paid.

Thereafter, both the Philso Estates and the decedent appealed. At or about the same time the New York Title and Mortgage Company went into liquidation and its affairs and liquidation were thereafter handled by the Superintendent of Insurance of the State of New York. After numerous conferences between counsel for the Superintendent of Insurance and counsel for Philso and for decedent, the parties involved agreed upon a settlement. A proposed stipulation of settlement was prepared, signed by all parties, and approved by the late Mr. Justice Frankenthaler, of the New York Supreme Court, who handled the liquidation of the title company. The terms of the settlement were that Philso Estates, and its attorneys, in consideration of discontinuing its appeal and in settlement of all claims which it had with the title company, were admitted as general creditors of the New York Title and Mortgage Company to the extent of $20,000. This occurred on March 10, 1936.

In the interim and after several mesne conveyances, one George M. Tonjes and his wife became the record owners of several of the parcels of real estate subject to the aforesaid written instrument and at one time owned by Philso Estates, Inc. The grantees above named executed a bond and mortgage to the Washington Irving Trust Company in order to secure an indebtedness of $9,000. Application was made to the Federal Housing Administration by the lending institution for the insurance of the aforesaid mortgage, and after an investigation the mortgage was insured.

The bond and mortgage was thereafter sold to the Comptroller of the State of New York in trust for the New York State Employees Retirement System. When the mortgagors defaulted, the assignee of the mortgage filed a claim under the insurance provisions of the National Housing Act with the Federal Housing Administration. In the interim the property was conveyed to the Comptroller in lieu of foreclosure suit. When the claim was certified and paid by the Administration, the security (the land in question) was transferred to the Administrator for and on behalf of the United States.

The United States attorney, in his papers in the within motions, claims that the instrument did not have affixed to it certain state revenue stamps. While it is true that at the time the instrument was recorded revenue stamps were not affixed, it now appears that in May, 1941, the Glenwolde, Inc., one of the defendant's predecessors in title paid the state tax and affixed the stamps. I will not, therefore, consider this issue further.

Motion 1. I believe this court has jurisdiction of the within action, and that the Federal Housing Administrator is subject to being sued herein.

It is true that the United States of America, as a sovereign, is basically immune from suit (Cunningham v. Macon, etc., 109 U.S. 446, 3 S.Ct. 292, 27 L.Ed. 992; Metropolitan Life Ins. Co. v. United States, 6 Cir., 106 F.2d 311, certiorari denied 310 U.S. 630, 60 S.Ct. 978, 84 L.Ed. 1400), and that therefore instrumentalities of the Federal Government, of which the Federal Housing Administration is one, are likewise immune from suit unless Congress has expressly waived that immunity (Federal Land Bank v. Priddy, 295 U.S. 229, 55 S.Ct. 705, 79 L.Ed. 1408; Missouri Pacific R. Co. v. Ault, 256 U.S. 554, 41 S.Ct. 593, 65 L.Ed. 1087; The Lake Monroe, 250 U. S. 246, 39 S.Ct. 460, 63 L.Ed. 962).

However, Congress, in creating the Federal Housing Administration, has expressly waived that immunity by declaring that the Federal Housing Administrator can sue and be sued in his official capacity, 12 U.S.C.A. § 1702, and the courts have held that although not all sovereign immunities have been waived (see United States v. Summerlin, 310 U.S. 414, 60 S.Ct. 1019, 84 L.Ed. 1283; Wagner v. McDonald, Federal Housing Administrator, 8 Cir., 96 F.2d 273; In re T. N. Wilson, Inc., D. C., 24 F.Supp. 651), nevertheless he can be sued. Federal Housing Administration v. Burr, 309 U.S. 242, 60 S.Ct. 488, 84 L.Ed. 724.

The Federal Housing Administrator herein contends, however, that since he

---

[1] No opinion for publication.

is the record owner of the premises, and is but an instrumentality of the United States, the United States is really the owner of the property in question, and as such cannot be sued. This argument is based on the language of Federal Housing Administration v. Burr, supra, 309 U.S. at page 250, 60 S.Ct. at page 493, 84 L.Ed. 724, where the Court, in holding the Administrator amenable to civil process, stated: "That does not, of course, mean that any funds or property of the United States can be held responsible for this judgment." However, the Court went on to say: "Claims against a corporation are normally collectible only from corporate assets. That is true here. Congress has specifically directed that all such claims against the Federal Housing Administration of the type here involved 'shall be paid out of funds made available by this Act (chapter)' § 1. Hence those funds, and only those, are subject to execution."

The United States did not acquire the within property for use in a governmental function, but rather acquired it as part of its business in administrating the National Housing Act. The Administrator, in acquiring the property, was acting in his official capacity as such Administrator, and hence I believe the within suit is within the intent of Congress when it gave its consent to the Administrator to "sue and be sued", especially when the federal government is in commercial and business transactions with the public. As was said in the Burr case, supra, 309 U.S. at page 245, 60 S.Ct. at page 490, 84 L.Ed. 724: "Hence, when Congress establishes such an agency, authorizes it to engage in commercial and business transactions with the public, and permits it to 'sue and be sued', it cannot be lightly assumed that restrictions on that authority are to be implied. Rather if the general authority to 'sue and be sued' is to be delimited by implied exceptions, it must be clearly shown that certain types of suits are not consistent with the statutory or constitutional scheme [Cf. People of Porto Rico v. Rosaly y Castillo, 227 U.S. 270, 33 S.Ct. 352, 57 L.Ed. 507], that an implied restriction of the general authority is necessary to avoid grave interference with the performance of a governmental function, or that for other reasons it was plainly the purpose of Congress to use the 'sue and be sued' clause in a narrow sense. In the absence of such showing, it must be presumed that when Congress launched a governmental agency into the commercial world and endowed it with authority to 'sue or be sued', that agency is not less amenable to judicial process than a private enterprise under like circumstances would be."

The Federal Housing Administrator has placed great weight upon the cases of Sissman v. Chicago Title & Trust Co. et al., 303 Ill.App. 620, 25 N.E.2d 599, and Breen et al. v. Mortgage Comm. of State of New York, 285 N.Y. 425, 35 N.E.2d 25. In the Sissman case [303 Ill.App. 620, 25 N.E.2d 660], the court was interpreting 28 U.S.C. A., § 901, or when the United States may be sued "for the purpose of securing an adjudication touching any mortgage or other lien the United States may have, or claim on the premises". The Court there held that since the United States was the record owner, it could not be foreclosed since such an action was not sanctioned by § 901, Title 28 U.S.C.A. That is not the situation at bar, for in the instant case the question arises under 12 U.S.C.A. § 1702, in relation to the official business of the Federal Housing Administration, entirely separated from the section interpreted by the Illinois State Court above.

In the Breen case, supra, the New York Court of Appeals held that since the New York State Legislature did not specifically provide for the New York Mortgage Commission to be sued in the Supreme Court of the State of New York, although it had given its consent for the Mortgage Commission to "sue and be sued" [285 N.Y. 425, 35 N.E.2d 28], an action against the Mortgage Commission must be maintained in the New York Court of Claims. This case does not treat of the problem involved herein since the Federal Housing Administrator can "sue and be sued" in any court of competent jurisdiction, state or federal. 12 U.S.C.A. § 1702.

I do not find any language to the contrary in the cases of Wagner v. McDonald, Federal Housing Administrator, 8 Cir., 96 F.2d 273; Korman v. Federal Housing Administrator, 72 App.D.C. 245, 113 F.2d 743; In re T. N. Wilson, Inc., D.C., 24 F.Supp. 651; or in In re Wilson, D.C., 23 F.Supp. 236, for, in all these cases, the question was decided that Congress had not waived the statutory priority of the United States to a claim in a bankrupt's estate.

I therefore deny the motion of the Federal Housing Administrator to dismiss the complaint herein on the ground that this court lacks jurisdiction.

Motion 2. The motion for summary judgment must also be denied.

This motion for summary judgment is based on (a) defendant's defense of res adjudicata, in that the prior adjudication holding the within instrument to be a mortgage, and that it was fully paid, estops the plaintiff from bringing the present suit; (b) plaintiff is barred from proceeding with this suit because of laches; (c) plaintiff is barred from proceeding because he has not the requisite "clean hands" for a suit in equity; and (d) plaintiff is barred by the Statute of Limitations.

Without considering whether or not the defendant, Federal Housing Administrator, is in privity of estate with a party to the prior adjudication, the motion must be denied.

After the judgment had been entered in the prior suit, both Philso Estates (plaintiff therein) and Riordan served Notices of Appeal. Before the appeals could be heard, the defendant therein, New York Title and Mortgage Company, went into liquidation. After numerous conferences with the Superintendent of Insurance, as liquidator of said title company, it was agreed that the Philso Estates, Inc., and the attorneys, would be allowed to file claims for $20,000 against the title company in full settlement of the claims. After a recital of the facts, and providing for the allowances of the claims in the sum of $20,000, together with exchange of releases, the stipulation of settlement stated: "Third. The parties hereto do severally mutually agree further that they will execute such stipulations or other papers as may be necessary and requisite in the premises for the purpose of discontinuing the appeals heretofore referred to herein, now pending in the Appellate Division of the Supreme Court in and for the Second Judicial Department, and such other papers as may be necessary and requisite to discontinue said action and terminate all litigation with reference to said title insurance policy." The plaintiff herein now claims that by this agreement the prior judgment was rendered a nullity, and hence cannot be considered as a bar to this action. Loeb v. Willis, 100 N.Y. 231, 3 N.E. 177. In Deen v. Milne, 113 N.Y. 303, at page 309, 20 N.E. 861, at page 863, it is stated: "It is thus wholly immaterial whether the stipulation to discontinue and to vacate the judgment was ever entered into in writing or not, and equally immaterial whether or not the writing (if originally made at the trial) contained anything but a stipulation to discontinue the action. Either the oral agreement or the written stipulation to discontinue the action included as a consequence the vacation of the marine court judgment, whether so expressed or not. Loeb v. Willis, 100 N.Y. 231, 3 N.E. 177. This is the effect of the decision in the above case. It is true there was an interlocutory judgment entered in that case; but we do not see any difference, so far as this question is concerned, between an interlocutory and a final judgment as both are included in the meaning of such a stipulation."

The defendant Federal Housing Administrator herein claims that the stipulation of the parties to the prior action hereinabove referred to, was only to discontinue the appeal, and that therefore the judgment in that case still stands to bar the plaintiff in this action. However, under the doctrine of the Loeb and Deen cases quoted above, I think there is a grave doubt that the parties intended by their stipulation to allow the judgment to stand in full force.

From the agreement it would appear that the parties may have intended to treat the judgment as a nullity, although they failed to so state in so many words in the agreement of discontinuance. However, they did make provision to settle and discontinue all claims arising over the title insurance policy, which would seem to mean that they were considering the judgment as set aside or vacated by their action.

■ It should be remembered that when the Superintendent of Insurance allowed the Philso Estates, Inc., claim, he had on record a judgment in his favor, whereby he did not have to pay anything. The fact that the late Judge Frankenthaler of the New York Supreme Court gave permission to the Superintendent of Insurance to settle the action is immaterial on the question of what the parties intended as regards the effect of their settlement in the vacation of the judgment.

■ In any event, I believe there is a grave issue of fact whether or not the parties intended to vacate the judgment by their agreement to settle and discontinue the litigation. I believe the trial court will be in a better position to pass on the question of this defense of res adjudicata after the proper proof has been submitted.

■ It is fundamental law that a judgment which has been set aside, vacated or

reversed on appeal is not a bar to a subsequent suit between the parties or their privies on the same subject matter. The doctrine of res adjudicata does not apply in such a situation, as the prior judgment is a nullity.

The defense of laches and equitable estoppel cannot be decided on papers. Nor can the defense of "unclean hands" be decided without the proper proof at the trial. These defenses raise an issue of fact. Therefore they must await the trial of the action.

The defense of the Statute of Limitations was admittedly inserted only if plaintiff's complaint was in ejectment. Under such circumstances I feel this defense should also await the trial, or until it is determined which course the plaintiff pursues.

Therefore the motion for summary judgment is denied. Settle orders on notice.