HORTENSIA MÉNDEZ DE ESCALONA, Plaintiff and Appellant, *v.* RAFAEL BUSCAGLIA, TREASURER OF PUERTO RICO, Defendant and Appellee.

No. 8865. Argued November 14, 1944.—Decided March 23, 1945.

*Manuèl Benítez Flores* for appellant. *Jesús A. González, Acting Attorney General,* and *José N. Rivera Barreras, Deputy Attorney General,* for appellee.

Mr. Justice Snyder delivered the opinion of the court.

The plaintiff sued the Treasurer of Puerto Rico in the instant case, alleging that in 1938 the Collector of Internal Revenue for San Juan attached certain real estate the title of which was in the name of Apelio Felices Portilla, in order to collect the unpaid taxes amounting to $1,606.97, of a *sociedad* of which Felices was the managing partner; that the plaintiff was present at the tax sale of the said property held on October 27, 1938, and purchased the same for $1,632.98, which she paid to the Collector; that the plaintiff nevertheless has not been able to take possession of the property and has not acquired title thereto, because the Registrar of Property has refused to register the title free of any encumbrances in her name on the ground that a mortgage of the property was recorded prior to the sale, which was not wiped out by the sale, the taxes herein not being a senior lien to the mortgage; that the certificate issued by the Collector recited that "if the right of redemption were not exercised within a year, the certificate would constitute an absolute title to the property sold, once it was inscribed in the Registry of Property, free and clear of any mortgage charge or other lien"; that this was not true, as the mortgage which existed before the sale was not wiped out by the sale because the taxes involved were not taxes on the property sold and there was therefore no priority in the tax title as against the mortgage already on the property; that neither in the advertisements, at the sale, or at any order time did the Collector advise her of the priority of the said mortgage, but that on the contrary the certificate of the Collector lead her to believe, and she believed in good faith, that at the time of the purchase, the property was free of any lien; that the Treasurer has refused to return the money she paid for the property; that the sale and contract of sale are null and void; that the Treasurer is improperly retaining the purchase price and should be ordered to return the

same to her. Her prayer was (*a*) that the sale be annulled; (*b*) that the contract of sale be rescinded; and (*c*) that the Treasurer be ordered to return to the plaintiff the sum of $1,632.98.

The Treasurer moved to dismiss because the complaint failed to state facts constituting a cause of action, and because the court had no jurisdiction of the subject-matter or of the defendant. This motion was not argued. Instead, the district court conducted a trial on the merits after the answer had been filed. Nevertheless, the court did not examine the evidence taken, but proceeded thereafter to enter judgment for the defendant on the ground that the complaint did not state a cause of action. The plaintiff has appealed from that judgment.

Although the plaintiff does not admit that the lower court was technically correct in ruling that the complaint does not state a cause of action, she does concede—indeed she alleges—that since the mortgage was recorded before the sale, under the circumstances herein—a tax sale of property of an individual for unpaid taxes on personal property of a *sociedad* of which the individual was the managing partner—the mortgage took precedence over the tax title (*Fajardo Sugar Co. of P. R.* v. *Domenech,* 45 P.R.R. 539, 542–48; § 315, Political Code; § 1 of Act No. 14, Laws of P. R., 1933 (p. 76). Sections 292, 339, Political Code; *Gregory* v. *Treasurer,* 24 P.R.R. 87).[1] Her complaint is predicated solely on the language used in the certificate of sale, and on the failure of the Collector to warn her of the existence of the mortgage. But it is elementary that *caveat emptor* applies to tax sales; the buyer takes the property as he finds it. There is no obligation imposed by law, so far

[1] There are, as will be seen, a number of peculiarities in this case, one of which is that the mortgage, which was for more than the value of the house, was recorded on the same day as the attachment for the unpaid taxes was annotated in the Registry. The plaintiff, however, raised no question about the validity of the mortgage, and no question involving it is before us.

as we are aware, that the Government is required to certify the state of the title to a prospective purchaser. And the certificate of the Collector was simply in the usual form with reference to the period of redemption; no warranty of the title can reasonably be read into it. Indeed, it specifically directed attention to the fact that it required registration to give the plaintiff an absolutely valid title. We pointed out in the *Fajardo Sugar Co.* case that under the circumstances herein the property (p. 545) "can be attached and sold without prejudice to the preferred liens legally constituted upon it"; and that (p. 548) "even though the collector were to issue his certificate stating that the property involved was sold free from encumbrances, if in truth there existed former liens duly constituted, which had priority and could not be destroyed under the law, the registrar, when recording the certificate, could refuse to cancel the same; or the person in whose favor they were constituted could enforce them despite the certificate." See *Marrero* v. *Registrar*, 48 P.R.R. 16; *Salgado* v. *Registrar*, 26 P.R.R. 157; 3 Cooley on Taxation, 4th ed., § 1497, p. 2945; 4 Cooley, *supra*, § 1553, p. 3045; 31 L.R.A. (N. S.) 1141; *Bell* v. *Los Angeles County*, 266 P. 29, (Calif., 1928).

However, the difficulties here is that a trial on the merits was actually held. And at the trial there was considerable testimony on behalf of the plaintiff, most of which was not challenged by the defendant, that the plaintiff had originally purchased a different property at the tax sale held on October 27, 1938; that the previous Treasurer thereupon sent for her and asked her to do him a favor and to permit the sale to be cancelled because the property belonged to his personal physician and had been sold while the Treasurer was in continental United States;[2] that she agreed to do this when the Treasurer promised that there would be

---

[2] If these facts be true, it is difficult to see why the Treasurer took this action, unless he wanted to wipe out the record of the tax sale, as the owner could have redeemed within a year.

returned to her the purchase price plus interest; that a few days later the money was sent to the Collector for her and that the latter was in the midst of returning it to her when he suggested that she might like to invest her money in the property involved herein, which had also been listed for sale on October 27 for unpaid taxes; that the transaction of sale was then and there consummated by predating the documents involved in order to make it appear that the sale of the property herein had actually taken place on October 27;[3] that when it subsequently developed that a prior mortgage existed on the property, the Treasurer agreed that an injustice had been done to her and asked the Attorney General for an opinion as to whether he had the power to annul the sale and to return the money to the widow;[4] that the Attorney General replied in the negative, whereupon the plaintiff filed the present suit; and that a bill was unanimously passed in the Legislature providing for the return of the purchase price to the plaintiff, but that the Governor vetoed the bill on the advice of the Attorney General that the present suit was pending, and that the Government would win the case.

The testimony adduced at the trial was, of course, not in conformity with the complaint. However, having admitted it, the lower court might well have considered whether or not it should consider the pleadings as amended to conform to the evidence (see *Viñas* v. *Hernández*, 60 P.R.R. 269; *García et al.* v. *Martínez, per curiam,* decided on February 23, 1945; Rule 15(*b*), Rules of Civil Procedure). And, it might be argued, although the district court failed to do

---

[3] Relying largely on the presumption that the dates on the documents speak for themselves, the defendant denies this particular fact.

[4] It is interesting to note that when it was a question of clearing the property and name of his personal physician, the former Treasurer did not ask for an opinion of the Attorney General. He simply proceeded without further ado to cancel the perfectly valid tax sale of the first property to the plaintiff and returned her money with interest—probably supplied by the physician and not by the Treasurer, although the record is not clear on this last point.

so, that we should weigh the evidence and decide the case on the testimony rather than on the technical pleadings. However, we never reach that question, as an insurmountable difficulty prevents us from considering this case on the merits.

The defendant pleaded lack of jurisdiction. The district court found it unnecessary to consider this defense. It has been renewed in this court. The People of Puerto Rico cannot be sued without its consent (*Bonet* v. *Yabucoa Sugar Co.*, 306 U. S. 505; *Porto Rico* v. *Rosaly*, 227 U. S. 270). The defendant asserts that this is in substance a suit against the People of Puerto Rico. The plaintiff does not argue this question in her brief.

The defendant asserts that consent to the suit herein cannot be found within Act No. 76, Laws of P. R., 1916 (p. 151), as amended by Act No. 11, 1928 (p. 130), since this is not a suit for damages or for revendication of property. The defendant cites *Miguel* v. *Treasurer of Porto Rico*, 28 P.R.R. 704; *Martínez* v. *The People of P. R.*, 19 P.R.R. 954; and *Rubert Hnos.* v. *The People et al.*, 19 P.R.R. 873, in support of his position.

In the *Miguel* case, we pointed out that whether the suit is against the state depends upon (p. 706) "the nature of the suit or of the relief demanded." There the plaintiff sued for an injunction to restrain the Treasurer from paying the purchase price for property to be used as a site for a hospital. It was alleged that the purchase price was excessive, and that the hospital had already been erected on land presented as a gift to the Government. This court held that the Treasurer had no individual interest in the suit, and that the Government of Puerto Rico was the only real party in interest. We therefore held that the dismissal of the suit for want of jurisdiction was proper. We quoted and applied the language used by our Circuit Court in disposing of another aspect of the same case as follows: "It is not alleged in the bill that the defendant, in deciding upon the

location, acted in bad faith and beyond the scope of the authority conferred upon him, and, in the absence of such an allegation, it is to be presumed that he acted in good faith and within the scope of his authority. In view of this situation, and the fact that the bill is prosecuted against Soler in his official capacity as commissioner of health, the question arises whether the action is not one in reality against the sovereign, The People of Puerto Rico. As to this we entertain no doubt. The action is brought to enjoin the consummation of a contract in which the defendant individually has no interest, and in which The People of Porto Rico are alone interested. It is, in reality, an action against the sovereign (cases), and, if it has not consented to be sued, the action cannot be maintained." (*Soler* v. *Scoville et al.*, 253 Fed. 932, 934 (C.C.A. 1, 1918).) See *Fajardo Sugar Co. of P. R.* v. *Domenech, supra*, pp. 540–42; *Ford Motor Co.* v. *Department of Treasury*, 323 U. S. 459, decided January 8, 1945.

The real purpose of the suit herein is to obtain from the People of Puerto Rico the payment of $1,606.97 from the Treasury of Puerto Rico. The original complaint makes that abundantly clear. And even if we consider the complaint as amended by the testimony, the charges of alleged improper conduct by various former officials of the Government cannot of themselves create a right to sue the Government for a sum of money even if the Government has financially benefitted from the said conduct. If such facts be true, this may be unconscionable; but relief therefor is not in our hands. Whether or not the plaintiff has any remedy against the former officials whom she charges with improper conduct as individuals likewise is not for us to say in this case. We hold only that she cannot sue the Government for the money in question as consent therefor has not been granted. And the most eloquent testimony that this is in substance a suit against the Government is furnished by the fact that the

present Treasurer, who took office after all the events herein took place, is the defendant; and he is asked to pay the plaintiff from the Treasury, not out of his personal funds.[5]

In view of these considerations, we are powerless to act in this case. Relief for the plaintiff, if any, must come from another branch of the Government. She once convinced the Legislature that a great injustice had been done to her. Perhaps she can do so again.

The judgment of the district court will be affirmed.

---

[5] The case of *Board of National Missions* v. *Robles,* 58 P.R.R. 223, is distinguishable on its facts. The property of the plaintiff in that case, dedicated to religious services, was exempt from taxation. It was nevertheless sold for unpaid taxes to one Robles. This court overruled a judgment sustaining a demurrer to a suit to adjudge the tax sale void. There the taxpayer himself was protesting against a tax sale as void. Moreover, the Treasurer may not have been a necessary party in a suit by the plaintiff against the alleged purchaser at a tax sale to clear its title to its tax-exempt property. There is no discussion in that case of the point involved herein. In the present case the taxpayer was admittedly in default and the property could validly be sold at the tax sale, although the purchaser took title subject to a prior mortgage. The purchaser, setting up a claim of improper conduct of certain former government officials, sues herein for the return of her money from the Treasury. That is obviously a suit against the Government and cannot prosper in the absence of consent by the Government thereto.