# PEOPLE OF PORTO RICO *v.* EMMANUEL, BARON DU LAURENS D'OISELAY.

## APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR PORTO RICO.

No. 4.   Argued October 23, 1914.—Decided November 30, 1914.

Under § 35 of the Foraker Act of April 12, 1900, the jurisdiction of this
court on appeals from the District Court of the United States for
Porto Rico is confined to determining whether the facts found by
that court support its judgment and whether there was material and
prejudicial error in the admission or rejection of evidence manifested
by exceptions properly certified.

In such a case, in the absence of a bill of exceptions, questions of ad-
missibility of evidence are excluded and the review is confined to
what appears upon the face of the pleadings and the findings. *Rosaly*
v. *Graham*, 225 U. S. 584.

Under the Territorial Practice Act of 1874 which governed appeals
to this court from Porto Rico taken under § 35 of the Foraker Act,
proceedings for review in this court in actions at law as well as in
equitable actions are by appeal and not by writ of error unless there
was a jury trial.

The government of Porto Rico is of such a nature as to come within
the general rule exempting a government, sovereign in its attributes,
from being sued without its consent, *Porto Rico* v. *Rosaly*, 227 U. S.
270; but in this case, *quære* whether Porto Rico fairly raised the
question of immunity or whether it did not consent to litigate the
case on the merits.

An action against the government of Porto Rico for the wrongful act of

the Treasurer in registering private property as part of the public domain and preventing the collection of rents by the owner, is an action for fault or for negligence mentioned in § 1803, Civil Code, and the one year period of prescription obtains under § 1869, Civil Code of Porto Rico.

*Quære,* whether the period of prescription under § 1869, Civil Code of Porto Rico, begins to run from the time of knowledge of the wrongful act or from the time of knowledge of the damage consequent thereon.

5 Porto Rico Fed. Rep. 89, 362, reversed.

THE facts, which involve the jurisdiction of this court on appeals from the District Court of the United States for Porto Rico and the right to sue Porto Rico, and the construction and application of the statute of limitations of Porto Rico, are stated in the opinion.

*Mr. Samuel T. Ansell,* with whom *Mr. Felix Frankfurter, Mr. Foster V. Brown,* Attorney General of Porto Rico, and *Mr. Paul Charlton* were on the brief, for appellant.

*Mr. Frederico Degetau* for appellee, submitted.

MR. JUSTICE PITNEY delivered the opinion of the court.

This action was commenced July 23, 1908, in the United States District Court for Porto Rico by Pierre Emmanuel, Baron du Laurens d'Oiselay, a citizen of the Republic of France and a resident thereof, against the People of Porto Rico. His complaint alleged that he was the owner of an estate composed of 4133 cuerdas of land situate in the Municipality of Lares, acquired by him as a legacy from the Duchess de Mahon Crillon, who died in France in April, 1899; that until the year of her death the Duchess had been paying the taxes and receiving from her colonists a considerable annual income; that on September 4, 1900, the defendant, through the Treasurer of Porto Rico, decided that said property belonged to the Treasury of Porto Rico, and ordered among other things that the Duchess

be immediately eliminated from the assessment of the property, that the "terratenientes" (landholders or colonists) be made to appear in the assessments instead of the Duchess, and "that they proceed to deliver the deeds or titles of concessions that they might possess which gave them the right to the use and fruits of the land to be sent to the Treasury"; and that by these means defendant "wrongfully deprived your plaintiff of his ownership over said property and its rents, the said property having been recorded in the registry of the property in the name of the People of Porto Rico, the defendant herein, without having heard your petitioner, or even summoned him to be heard;" that in view of this action plaintiff, after having vainly tried to obtain satisfaction from defendant, was obliged to establish the validity of his titles before the courts; that he instituted a suit in the District Court of San Juan on January 30, 1901, against the defendant, and that court on August 1, 1902, decided that the lands referred to were the property of plaintiff, and ordered that the inscription made in the Registry in the name of the People of Porto Rico be canceled; that the People took an appeal to the Supreme Court of Porto Rico, and that court affirmed the decisions and confirmed the findings of the District Court by its opinion of May 23, 1904 (2 Castro P. R. Dec. 103; 7 P. R. 216); that after the question of title was decided, the People of Porto Rico did nothing to put plaintiff in possession of the property, the colonists were not willing to again pay rents to him, and he was obliged to resort to the courts to be put in possession of the lands; that by such litigation he did obtain possession, but that he was entitled to recover from defendant the fruits of which he had been deprived by defendant's action from the time he was unjustly deprived of his ownership until his property was delivered back to him; the period mentioned being from September, 1900, to December, 1905.

By demurrer and answer the People of Porto Rico inter-
posed a number of defenses; and, among others, that the
action was prescribed by virtue of the provisions of § 1869
of the Civil Code.

The cause came on for trial on the merits before the
court without a jury, pursuant to a stipulation of the
parties, with the result that judgment was rendered in
favor of plaintiff for $7,450. (5 P. R. Fed. Rep. 89.) A
motion for a new trial was denied (5 P. R. Fed. Rep. 362),
and defendant appealed to this court.

In view of appellee's motion to dismiss, we may begin
by saying that at the time the appeal was taken the act
of April 12, 1900, known as the Foraker Act, was in force
(c. 191, 31 Stat. 77, 85), by § 35 of which it was enacted
that "Writs of error and appeals from the final decisions
of the Supreme Court of Porto Rico and the District Court
of the United States shall be allowed and may be taken
to the Supreme Court of the United States in the same
manner and under the same regulations and in the same
cases as from the Supreme Courts of the Territories of the
United States," etc. Writs of error and appeals from the
Supreme Courts of the Territories were regulated by the
act of April 7, 1874 (c. 80, 18 Stat. 27), by the first sec-
tion of which the separate exercise of the common-law
and chancery jurisdictions in the territorial courts was
dispensed with, and the several codes and rules of practice
adopted in the Territories respectively, in so far as they
authorized a mingling of said jurisdictions or a uniform
course of proceeding in all cases whether legal or equitable,
were confirmed; and by the second section it was enacted:
"That the appellate jurisdiction of the Supreme Court
of the United States over the judgments and decrees of
said territorial courts in cases of trial by jury shall be
exercised by writ of error, and in all other cases by appeal
according to such rules and regulations as to form and
modes of proceeding as the said Supreme Court have pre-

scribed or may hereafter prescribe: *Provided,* that on appeal, instead of the evidence at large, a statement of the facts of the case in the nature of a special verdict, and also the rulings of the court on the admission or rejection of evidence when excepted to, shall be made and certified by the court below, and transmitted to the Supreme Court together with the transcript of the proceedings and judgment or decree."

Under this system (since superseded by § 244 of the Judicial Code of March 3, 1911, c. 231, 36 Stat. 1087, 1157), our jurisdiction was, and in the present case is, confined to determining whether the facts found by the Supreme Court of Porto Rico support its judgment, and whether there was material and prejudicial error in the admission or rejection of evidence manifested by exceptions properly certified. In the absence of a bill of exceptions, questions respecting the admissibility of evidence are of course excluded from our consideration, and the review is confined to what appears upon the face of the pleadings and the findings. *Rosaly* v. *Graham,* 227 U. S. 584, 590, and cases cited.

The motion to dismiss is in part based upon the ground that the bill of exceptions herein was not settled and signed until after the expiration of the term in which the new trial was denied, and that certain orders of the court relied upon by appellant as extending the time for settling the exceptions have no legal validity. We have examined the grounds upon which this contention rests, and have reached the conclusion that it must be overruled. We spend no further time upon it, since, in the view we take of the merits, the rulings on evidence shown by the bill of exceptions may be disregarded.

The motion to dismiss is based upon the further ground that the case, being an action at law, should have been brought to this court by writ of error, and not by appeal. But the provisions of the act of 1874, above mentioned,

render it clear that in legal as well as in equitable actions the proceedings for review must be by appeal, unless there was a trial by jury. The motion to ·dismiss is therefore denied.

Coming to the merits, the facts certified are as follows: In the year 1900, shortly after the American occupation of Porto Rico, the then Treasurer of the Island, Mr. J. H. Hollander, reached the conclusion that the land in question did not belong to plaintiff, who claimed to have inherited it from the Duchess de Mahon Crillon of France, but was public property, and he therefore, as. Treasurer, caused the tenants living upon the land to be so notified and the property to be registered in the Registry of Property as belonging to the People of Porto Rico. Plaintiff protested vigorously against this, but without immediate result. In a short time, however, he produced such evidence of title to Mr. Hollander that the latter wrote him that he had better begin a suit against the People of Porto Rico and have the matter judicially determined. Plaintiff did file such a suit in the District Court at San Juan. The Attorney General of the Island and his assistant appeared and contested the action, but the decision was for the plaintiff. The Attorney General, on the part of the People, took an appeal to the Supreme Court of the Island, and that court in June, 1904, decided in favor of the plaintiff, affirming the decision of the lower court. (2 Castro P. R. Dec. 103; 7 P. R. 216.) From the time Mr. Hollander registered the property in the name of the People of Porto Rico until plaintiff was again put in possession of the land in the latter part of the year 1905 the tenants refused to pay rent to plaintiff, and the entire sum was lost to him except a few hundred pesos which he managed to collect after much expensive litigation against the tenants. The court found that Mr. Hollander was a special agent of the State for the purpose of the transactions in question, within the meaning of § 1804 of the

Civil Code of 1902; and further that his action was ratified
by the Government of Porto Rico by refusing to restore
plaintiff's land to him, by requesting and obliging him to
bring a suit to establish his rights, and then by defending
this suit to final judgment and appealing from that judg-
ment to the Supreme Court of the Island. That the
Government of the Island never actually received any
rent, profit, or usufruct from the land or any portion of it;
but that it injured plaintiff by depriving him of the right
to the use and enjoyment of his property for about five
years, in consequence of the deliberate but unauthorized
registry of the land in the name of the People of Porto
Rico, and by that action inducing his tenants to thereafter
desist and refuse, as they did, from paying him his usual
rents. The court found that the insular authorities caused
damage to the plaintiff in at least the sum of $7,450, and
for this amount judgment was entered, as already men-
tioned. It will be observed that there is nothing to show
that the Government of Porto Rico, through its officers
or otherwise, was at any time in possession of any part
of the lands in question, and there is a distinct finding
that the Government itself never actually received any
rent, profit, or usufruct from the land or any portion of it.

We have recently decided that the Government of
Porto Rico is of such nature as to come within the general
rule exempting a government, sovereign in its attributes,
from being sued without its consent (*Porto Rico v. Rosaly*,
227 U. S. 270). Upon the face of the present record it
may be doubtful whether defendant fairly raised in the
pleadings the question of its general immunity from action,
or whether, on the other hand, its pleadings, construed
as a whole, did not rather amount to a consent to litigate
the merits. But upon the facts as pleaded and found we
think the learned judge of the District Court very properly
held that if plaintiff can legally recover, it must be by
virtue of § 1804 of the Civil Code, which is cited also

VOL. CCXXXV—17

as manifesting the Government's consent to be sued. The section must be read together with § 1803, with which it is inseparably connected. Both are set forth in the margin.[1]

---

[1] "SECTION 1803. A person who by an act or omission causes damage to another when there is fault or negligence shall be obliged to repair the damage so done.

"SECTION 1804. The obligation imposed by the preceding section is demandable, not only for personal acts and omissions, but also for those of the persons for whom they should be responsible.

"The father, and on his death or incapacity the mother, is liable for the damages caused by the minors who live with them.

"Guardians are liable for the damages caused by minors or incapacitated persons who are under their authority and live with them.

"Owners or directors of an establishment or enterprise are equally liable for the damages caused by their employés in the service of the branches in which the latter may be employed or on account of their duties.

"The State is liable in this sense when it acts through a special agent, but not when the damage should have been caused by the official to whom properly it pertained to do the act performed, in which case the provisions of the preceding section shall be applicable.

"Finally, masters or directors of arts and trades are liable for the damages caused by their pupils or apprentices while they are under their custody.

"The liability referred to in this section shall cease when the persons mentioned therein prove that they employed all the diligence of a good father or [sic] a family to avoid the damage."

These sections are taken from Articles 1902 and 1903 of the Spanish Code of 1889, where the clause respecting the responsibility of the State reads as follows: "El Estado es responsable en este concepto cuando obra por mediación de un agente especial; pero no cuando el daño. hubiese sido causado por el funcionario á quien propiamente corresponda la gestión practicada, en cuyo caso será aplicable lo dispuesto en el artículo anterior."

It was suggested upon the argument that a more satisfactory translation into English than that adopted in the Porto Rican Code is as follows: "The State is liable in this respect when it acts through the medium of a special agent, but not when the damage was caused by an official to whom the action taken properly pertained, in which case the provisions of the preceding article apply." In Walton's "Civil Law in

Assuming, however, that the facts certified in the findings, taken by themselves, show a liability on the part of the People of Porto Rico under these sections, still defendant, both by demurrer and by answer, set up prescription by virtue of the provisions of § 1869 of the Civil Code. That section, which is one of a series of sections relating to the prescription of actions, reads as follows:

"Section 1869.—The following prescribe in one year:

1.—Actions to recover or retain possession.

2.—Actions to demand civil liability for grave insults or calumny, and for obligations arising from the fault or negligence mentioned in § 1803, from the time the aggrieved person had knowledge thereof."

It seems to us clear that an action against the State, based upon the pertinent clause of § 1804, is an action to demand civil liability "for obligations arising from the fault or negligence mentioned in section 1803," within the meaning of § 1869. Section 1804 by its very terms imposes upon the principal, with respect to the acts of the representative, not any different obligation but the same obligation imposed by the preceding section. We say this, notwithstanding the somewhat peculiar form of expression in that part of § 1804 which exempts the State from liability when the damage is caused by the official to whom properly it pertained to do the act performed, viz.: the clause, "in which case the provisions of the preceding section shall be applicable." This cannot reasonably be interpreted as excluding the liability of the State under § 1803 in other cases, but is evidently intended to impose upon the official himself, in respect to damages

_____

Spain," p. 458, the following version is given: "The state is liable, in this sense, when it acts through a special agent, but not when the damage has been caused by the official to whom properly it pertains to do the act already done, in which case the provision of the preceding article shall apply." And see interpretation by Supreme Court of Spain in decision of May 18, 1904, 98 Jur. Civ. 390.

caused in the performance of his ordinary duties, a personal liability under the provisions of § 1803, leaving the State liable in the sense of that section when it acts through a special agent. No reason is suggested for limiting the prescription to one year in the case of a default or negligence attributable to defendant personally, and leaving the action unlimited when it is attributable to the fault of defendant's representative or agent.

Section 1869 being thus found to be applicable to such an action as the present, it only remains to ascertain and compare the pertinent dates. From his complaint herein and from the findings of the trial court it is plain that plaintiff had full knowledge of the wrongful acts of defendant's representative at least as soon as the time of the commencement of his former action against the People of Porto Rico, which was on January 30, 1901, and that the damage resulting from that wrongful conduct, and to recover which his present action is brought, was complete before the end of the year 1905. Evidently the damage was of such a character as to carry notice with it. As already mentioned, the present action was commenced in July, 1908. There is nothing in the record or the findings to explain or excuse this delay or to interrupt the prescription.

We are not advised of the grounds upon which the court below overruled the plea of prescription. In its opinion it simply said: "We are also of the belief that under the circumstances the court ought not to hold that the claim is barred by the one year statute of limitations, and of course no other is applicable to the facts." Counsel for appellee has not suggested any ground for avoiding the prescription—indeed, has made no argument upon the subject. We deem it clear that § 1869 applies, and that the action is therefore prescribed, and it follows that the judgment must be reversed, and the cause remanded for further proceedings in accordance with this opinion.

Under the facts of the case it is unnecessary to consider whether the period of prescription began to run when plaintiff first had knowledge of the alleged wrongful acts of Hollander, or only when he had knowledge of the damage consequent thereon. Upon this point, therefore, we express no opinion.

*Judgment reversed.*

MR. JUSTICE MCREYNOLDS took no part in the consideration or decision of this case.