**ALCOA STEAMSHIP CO., Inc., A. H. Bull Steamship Company, Inc., Lykes Brothers Steamship Company, Inc. and Waterman Steamship Corporation, Plaintiffs,**

v.

**Concepcion Perez PEREZ, Manager, Puerto Rico State Insurance Fund, Defendant,**

and

**Sea Land Service, Inc., Intervenor.**

**Civ. No. 1–62.**

United States District Court
D. Puerto Rico.

Dec. 31, 1968.

---

188

Hartzell, Fernandez & Novas, San Juan, P. R., for plaintiff.

William E. Naveira, Dept. of Justice, San Juan, P. R., for defendant State Insurance Fund.

Nicolas Jimenez, San Juan, P. R., for intervenor Sea Land.

CANCIO, Chief Judge:

Plaintiffs, Alcoa Steamship Company, Inc. (ALCOA), Bull Steamship Company, Inc. (BULL), Lykes Bros. Steamship Company, Inc. (LYKES), Waterman Steamship Corporation (WATERMAN), and Sea-Land Service, Inc. (SEA LAND), are corporations engaged in the ocean transportation of cargo and passengers between ports of the United States and ports of the Commonwealth of Puerto Rico. On July 7, 1961, Joaquín Gallart Mendía, former Manager of the Puerto Rico State Insurance Fund, mailed a circular letter to the plaintiffs, advising them to include in their payroll returns the wages paid to the seamen who were crew members on all their vessels entering the territorial or navigable waters of Puerto Rico. The letter notified plaintiffs that they were obliged to insure, under the Puerto Rico Workmen's Accident Compensation Act, the crew members employed by plaintiffs aboard their vessels against the risk of accidental injury sustained by them while in the course of their employment in the territorial or navigable waters of Puerto Rico, 11 L.P.R.A. 25. The Manager based his determination on the ruling of Fonseca v. Prann, 282 F.2d 153 (1st Cir. 1960), cert. denied 365 U.S. 860, 81 S.Ct. 826, 5 L.Ed.2d 822 (1961). Taking exception to the Manager's in-

terpretation of the *Fonseca* case, plaintiffs alleged that they were not covered by, nor were bound to comply with the provisions of, the Puerto Rico Workmen's Accident Compensation Act, 11 L.P.R.A. 1 et seq.

On January 3, 1962, except for Sea-Land, plaintiffs filed suit in this court seeking a declaratory judgment of their rights under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, contesting the right of the Manager to require the plaintiffs to obtain workmen's compensation insurance under the Puerto Rico Workmen's Accident Compensation Act, 11 L.P.R.A. 24. Jurisdiction was invoked under the provisions of Sections 1331, 1332 and 1337 of Title 28, and under Section 863 of Title 48 of the United States Code. Plaintiffs also asserted that a federal question arising under the Fourteenth Amendment of the Constitution and under the Federal Jones Act, 46 U.S.C. 688, was also present in the case, constituting further grounds for jurisdiction. The complaint, besides mentioning the facts outlined above, stated that the seamen involved were not residents of Puerto Rico, but were employed by plaintiffs pursuant to federal maritime law under shipping articles executed at continental United States ports. The complaint also stated that plaintiffs had no plain, speedy, efficient or adequate remedy at law to protect them against the action taken, or which could be taken, by the Manager under the Puerto Rico Workmen's Accident Compensation Act. The complaint specified that plaintiffs' refusal to insure their seamen and to pay premiums therefor could subject them to the penalties provided by the Workmen's Accident Compensation Act, 11 L.P.R.A. 16, 18 and 26.

On January 22, 1962, Sea-Land, the fifth plaintiff, intervened in the suit alleging in substance the same points of fact and law as the other plaintiffs.

During 1965, the Manager reliquidated and reinvestigated policy years 1961–62 through 1963–64 and made further demands for payment of the insurance premiums. Sea-Land and Waterman paid under protest and subsequently filed petitions for review before the Industrial Commission of Puerto Rico, which are now still pending.[1]

This Court, presided over by District Judge William C. Mathes, noted in dismissing plaintiffs' action that the broad statement in the *Fonseca* case, to the effect that "Congress intended to clothe the Government of Puerto Rico with power to provide for the application of its workmen's compensation act, to injuries suffered by employees on local navigable waters" only left open to question the Legislature of Puerto Rico's intent, as expressed in the language of the Workmen's Accident Compensation Act, and not its power.

The United States Court of Appeals for the First Circuit, on April 20, 1967, reversed and remanded the case to the District Court, stating in general that the Puerto Rico Workmen's Accident Compensation Act did not and could not preempt the general rule of maritime law which Congress, in exercising its constitutional power, had expressly made applicable to Puerto Rican waters, in common with all other American waters. Alcoa Steamship Co., Inc. v. Vélez, 376 F. 2d 521 (1st Cir. 1967). The Circuit Court noted that it was the manifest intention of the Legislature of Puerto Rico that its Workmen's Accident Compensation Act should not be used as a means to require the duplicate compensation insurance by an employer.

No review was sought by the Manager, and once the case was remanded to the District Court, three of the plaintiffs—

[1]. Plaintiffs' counsels, in oral argument, have informed the Court that they have pending a complaint seeking reimbursement, filed against the Secretary of the Treasury, before the Commonwealth's Superior Court, Alcoa Steamship Company, Inc., Waterman Steamship Corporation of Puerto Rico v. Honorable Jorge Font Saldaña, Secretary of the Treasury, Civil No. 67–5792.

Alcoa Steamship, Sea-Land, and Waterman—moved for judgment, citing the decision of the Circuit Court. Alcoa Steamship Co., Inc. v. Vélez, supra, as authority.

Accordingly, this District Court entered judgment in favor of plaintiffs, permanently enjoining the Manager of the State Insurance Fund from collecting or attempting to collect from the plaintiffs the insurance premiums that had been contested and ordering the reimbursement of moneys in an amount of approximately $60,000.

Concepción Pérez Pérez, the new incumbent as manager of the State Insurance Fund of Puerto Rico, now appears before the Court, represented by the Attorney General of the Commonwealth of Puerto Rico, seeking relief from judgment. The new manager contends in sum that the suit is in essence one against the Commonwealth of Puerto Rico, which is entitled to invoke its sovereign immunity from suit, even though individual officials have been named as nominal defendants. Plaintiffs, on the other hand, argue otherwise. This is the new legal question presented to the Court in the case at bar.

After reexamining the facts of the case and the applicable law, I agree with the new manager. This Court finds that this suit is one against both the nominal defendants, the Manager of the Puerto Rico State Insurance Fund, and against the Commonwealth of Puerto Rico.

In reviewing this case, the Circuit Court in clear and distinct terms declared plaintiffs' right in stating that the acts of the former manager of the State Insurance Fund were unauthorized by the Puerto Rico Workmen's Accident Compensation Act. Federal courts have long recognized the right to seek a restraining order against unconstitutional action threatened by an individual who is a state officer. Such suits are deemed not to be against the state. Georgia R. & Banking Co. v. Redwine, 342 U.S. 299, 72 S.Ct. 321, 96 L.Ed. 335 (1952); Alabama Public Service Commission v. Southern Ry. Co., 341 U.S 341, 71 S.Ct. 762, 95 L.Ed. 1002 (1951); Larson v. Domestic and Foreign Commerce Corp., 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949); Sterling v. Constantin, 287 U.S. 378, 53 S.Ct. 190, 77 L.Ed. 375 (1932); Greene v. Louisville and Interurban R. Co., 244 U.S. 499, 37 S.Ct. 673, 61 L.Ed. 1280 (1917); Gunter v. Atlantic Coast Line R. Co., 200 U.S. 273, 26 S.Ct. 252, 50 L.Ed. 477 (1906); Prout v. Starr, 188 U.S. 537, 23 S.Ct. 398, 47 L.Ed. 584 (1903); Smyth v. Ames, 169 U.S. 466, 18 S.Ct. 418, 42 L.Ed. 819 (1898); Tindal v. Wesley, 167 U.S. 204, 17 S.Ct. 770, 42 L.Ed. 137 (1897); Reagan v. Farmers' Loan and Trust Co., 154 U.S. 362, 14 S.Ct. 1047, 38 L.Ed. 1014 (1894); Pennoyer v. McConnaughy, 140 U.S. 1, 11 S.Ct. 699, 35 L.Ed. 363 (1891). Consequently, the Circuit Court's decision is binding on the present manager of the State Insurance Fund and on all subsequent incumbents. Therefore, the injunction decreed by this Court on March 5, 1968, still stands. The suit in this sense is directed against the nominal defendants, the managers of the State Insurance Fund.

But plaintiffs' request in seeking relief is two-fold. Not only do they ask this Court to restrain the defendants from collecting further insurance premiums, but also to order the Manager to refund the premiums previously paid under protest. The Attorney General, representing the present manager, points out that the State Insurance Fund has no treasury of its own, and that the premiums collected by the former manager have been covered into the treasury of the Commonwealth of Puerto Rico, as provided by law, 11 L.P.R.A. 24. This, he insists, is a clear indication that the real party in interest is the Commonwealth of Puerto Rico.

Manifestly, the State Insurance Fund is nothing more than an arm of the Commonwealth, performing an essential governmental function, rather than an entity, separate and distinct from the Commonwealth, 11 L.P.R.A. 1 et seq. This agency was created within the Commonwealth's Department of Labor

by virtue of Article 6(a) of Law No. 45, of April 18, 1935, 11 L.P.R.A. 8(a), as one of the governmental instrumentalities which would render services to the workers and employees covered by the law. Subsequently, under the Reorganization Plan No. 3 of 1950, Article 4(a), the Office of the Manager of the State Insurance Fund was transferred to the Department of Labor, so that it could continue under the direction and supervision of the Commissioner of Labor, today Secretary of Labor.

Neither the Workmen's Accident Compensation Act nor the Organic Act of the Department of Labor, 3 L.P.R.A. 304–322 and 324–328, vests power in the State Insurance Fund enabling it to sue or be sued on its own behalf. This same question was raised in Virginia Robles Alvarez v. State Insurance Fund and Secretary of Labor, Civil No. 66–1793, before the Commonwealth's Superior Court. The Supreme Court of Puerto Rico denied the petition to review the Superior Court's order dismissing the complaint, stating that the State Insurance Fund did not have power to sue or to be sued (Appendixes A and B).

The Workmen's Accident Compensation Act provides for the covering of the premiums collected by this agency into the treasury of the Commonwealth, 11 L.P.R.A. 24. Clearly, any order by this Court granting plaintiffs' request will undoubtedly affect directly the Commonwealth's Treasury and would be, in effect, against the Commonwealth. Land v. Dollar, 330 U.S. 731, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947); Smith v. Reeves, 178 U.S. 436, 20 S.Ct. 919, 44 L.Ed. 1140 (1900). Therefore, I conclude that the real party in interest regarding the refund of the premiums paid under protest is the Commonwealth of Puerto Rico, rather than the manager of the State Insurance Fund. In other words, plaintiffs do not merely seek to enjoin defendant from collecting premiums, they ask this Court to force the Commonwealth to take affirmative action. Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949); Kennecott Cooper Corp. v. State Tax Commission, 327 U.S. 573, 66 S.Ct. 745, 90 L.Ed. 862 (1946); Mine Safety Appliances Co. v. Forrestal, 326 U.S. 371, 694, 66 S.Ct. 219 90 L.Ed. 140 (1945); Ford Motor Co. v. Department of Treasury of State of Indiana, 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945); Great Northern Life Insurance Co. v. Read, 322 U.S. 47, 64 S.Ct. 873, 88 L.Ed. 1121 (1944); Minnesota v. Hitchcock, 185 U.S. 373, 22 S.Ct. 650, 46 L.Ed. 954 (1902); Ex Parte Ayers, 123 U.S. 443, 8 S.Ct. 164, 31 L.Ed. 216 (1887); Hagood v. Southern, 117 U.S. 52, 6 S.Ct. 608, 29 L.Ed. 805 (1886); Leber v. Canal Zone Central Labor Union & Metal Trades Council, 383 F.2d 110 (5th Cir. 1967); Delaware Valley Conservation Association v. Resor, 392 F.2d 331 (3rd Cir. 1968). The suit in this sense is directed against the Commonwealth of Puerto Rico and thus, sovereign immunity is at issue. The question now turns on whether or not Puerto Rico can be sued without its consent in a Court of the United States. The answer to this question hinges on the juridical relationship existing between Puerto Rico and the United States.

It is an historical fact that the United States acquired Puerto Rico from Spain pursuant to the Treaty of Paris, signed on December 10, 1898, whereby she was ceded by Spain to the United States. Treaty of Paris, Article II, 1 L.P.R.A., p. 18. It was also determined and agreed in that instrument that "[t]he civil rights and the political status of the native inhabitants of the territories hereby ceded to the United States shall be determined by the Congress." Id., Article IX, 1 L.P.R.A., p. 21.

Since Puerto Rico was ceded to the United States and until 1952, Congress had exercised its prerogatives granted under Article IX of the Treaty of Paris mainly through two Organic Acts: the Organic Act of April 12, 1900 (Foraker Act), 31 Stat. 77; and the Organic Act of March 2, 1917 (Jones Act), 39 Stat. 951. The Foraker Act was intended to provide a civil government for Puerto

Rico. That purpose is indicated in its very title. A body politic to be known as the People of Puerto Rico was created, with the governmental powers specifically granted by the Act and with the power to sue and be sued. Foraker Act, Section 7, April 12, 1900, c. 191, Section 7, 31 Stat. 79, 1 L.P.R.A. 7.

The Judicial Power of the body politic known as The People of Puerto Rico was vested in the courts and tribunals of Puerto Rico as they had already been in existence and in the manner reformed by General Order No. 118 issued by the Military Government in Puerto Rico on August 16, 1899. Yet, it was early apparent that the local courts of Puerto Rico were not sufficient to handle all of the legal needs that arose from United States's possession of the Island. General Order No. 88, of June 27, 1899, issued by the Military Government in Puerto Rico, undertook to fill some of these needs. Article I of that General Order stated:

In view of the existing and steadily increasing legal business requiring judicial determination which does not fall within the jurisdiction of the local insular courts, such as smuggling goods in evasion of revenue laws, larceny of United States property, controversies between citizens of different states and of foreign states, violation of the United States postal laws, etc., and pursuant to authority from the President of the United States, conveyed by endorsement of April 14, 1899, from the Acting Secretary of War, and after full conference with the supreme court and members of the bar of the island, a United States provisional court is hereby established for the Department of Porto Rico.

Article II, which follows immediately, further specified the jurisdiction of this court, thus:

The judicial power of the provisional court hereby established shall extend to all cases which would be properly cognizable by the circuit or district courts of the United States under the

Constitution, and to all common-law offenses within the restrictions hereinafter specified.

For even greater clarity, Article III of the General Order No. 88 quoted Article III, Sec. 2, par. 1 of the Constitution. In this manner, the jurisdiction of the court was established.

Section VIII of the General Order clarified the jurisdiction of the Provisional Court as to certain criminal matters. It is interesting to note that the fourth paragraph of that Article referred to:

Offenses committed by or against foreigners or by or against citizens of another State, district or Territory of the United States, residing in this Department.

Paragraph two also had language which is cogent to the problem presented in this case:

Offenses committed by or against persons, foreigners or Americans, *not residents of this department,* but who may be travelling or temporarily sojourning therein, or against the property of non-residents. (Emphasis supplied.)

Finally, Article X of General Order 88 stated the civil jurisdiction of the Provisional Court:

In civil actions where the amount in controversy is fifty *dollars* ($50) or over, and in which any of the classes of persons above enumerated in Paragraph VIII are parties, or in which the parties litigant by stipulation invoke its jurisdiction, shall be brought in the provisional court: *Provided,* That in the determination of all suits to which Porto Ricans are parties, or of suits arising from contracts which have been or shall be made under the provisions of Spanish or Porto Rican laws, the court shall, as far as practicable, conform to the precedents and decisions of the U. S. courts in similar cases which have been tried and determined in territory formerly acquired by the United States from Spain or Mexico. In all other civil actions the case shall lie within the jurisdiction of

the proper insular court as now provided by local law.

It is perfectly clear from the texts herein quoted that the predecessor of the United States District Court for the District of Puerto Rico, that is the Provisional Court, had a very limited jurisdiction, and that as far as the Department of Puerto Rico was concerned, it was treated in much the same way as a State, District or Territory.

The successor to the Provisional Court was the United States District Court for the District of Puerto Rico; this Court. The District Court was given the ordinary jurisdiction of district courts of the United States and in addition jurisdiction in all cases cognizant in the circuit courts of the United States. The Court was to proceed in the same manner as a circuit court. At the end of Section 34 of the Foraker Act, where the Court is created, Congress linked the United States District Court for the District of Puerto Rico with the United States Provisional Court:

> The United States District Court hereby established shall be the successor to the United States Provisional Court established by General Orders, Numbered Eighty-Eight, promulgated by Brigadier-General Davis, United States Volunteers, and shall take possession of all records of that court, and take jurisdiction of all cases and proceedings pending therein, and said United States Provisional Court is hereby discontinued. (Organic Act of 1900, April 12, 1900, c. 191, Sec. 34, 31 Stat. 84, 1 L.P.R.A. 34, pp. 46–47.)

The Court thus created had the jurisdiction that Congress had granted it, as well as the previous jurisdiction of the United States Provisional Court. As we have seen from the texts quoted, there is no direct grant of jurisdiction over the body politic known as the People of Puerto Rico. However, it might be argued that Congress granted that jurisdiction in the very section of the Foraker Act which created that very body politic with the "power to sue and be sued as such." Organic Act of 1900, April 12, 1900, c. 191, Sec. 7, 31 Stat. 79, 1 L.P. R.A., p. 31. This problem is not new and was raised and settled early in the relations between Puerto Rico and the United States.

Whether or not Puerto Rico can be sued without its consent is closely tied to the question of whether Puerto Rico is a sovereign or not, in a fashion similar as the states of the United States are sovereigns. This question was first raised in an oblique manner in the United States District Court for the District of Puerto Rico in the case of Horton v. Municipality of Aguadilla, 1 P.R.Fed. Rep. 457 (1903). There it was said in passing that a State must provide by law for its being sued. Id. at 459.

The issue was brought up squarely in point in Elkins v. People of Porto Rico, 5 P.R.Fed.Rep. 103 (1909). There it was held that:

> * * * [I]n our opinion, Porto Rico, in its actual administration, does originate and change at its will the law of contracts and property from which persons within the jurisdiction derive their rights, and for this reason, in this regard, is, we submit, as much sovereign, or at least as much entitled to sovereign attributes as any of the territories that are held to be incorporated into the United States. In fact, as to many things it is even more sovereign and more favored than are the continental territories. * * * Id. at 110.

After a careful analysis of the existence of sovereign powers within incorporated and unincorporated territories, and of a detailed study of Congressional intent in creating the body politic known as the People of Puerto Rico, Judge Rodney came to the conclusion that:

> * * * [I]t is our opinion that it [Congress] intended to, and did, create an orderly system of government with quasi sovereign powers and attributes, and not a mere municipal corporation with the rights only of an individual. Id. at 115.

Thus, the conclusion was inescapable: * * * under the law, as it now stands, the people of Porto Rico cannot be sued without their consent. Id. at 119.

The Supreme Court of Puerto Rico did not agree with the conclusions of the United States District Court for the District of Puerto Rico. In Rosaly v. El Pueblo, 16 P.R.R. 481 (1910), the Supreme Court of Puerto Rico concluded that under the Foraker Act, Puerto Rico had not been constituted either as an independent sovereign or as a sovereign within the Union, but had been granted many of the attributes which are characteristic of a sovereign. Id. at 483. However, the Court concluded that Congress had not granted to Puerto Rico immunity from suits. Id. at 487.

This case was appealed to the Supreme Court of the United States and that Court reversed the decision of the Supreme Court of Puerto Rico, People of Porto Rico v. Rosaly y Castillo, 227 U.S. 270, 33 S.Ct. 352, 57 L.Ed. 507 (1913). Speaking for the Court, Mr. Chief Justice White held that the manner in which the unincorporated Territory of Puerto Rico had been organized resembled very closely the manner in which the incorporated Territory of Hawaii had been organized, and that in the same manner as with the Territory of Hawaii, the then Territory of Puerto Rico was immune to suits except as consented to. Specifically construing the words in Section 7 of the Foraker Act, the Court concluded that:

* * * Thus interpreting the clause, it is but an expression of the power to sue arising from the terms of the organic act and a recognition of a liability to be sued consistently with the nature and character of the government; that is, *only in case of consent duly given.* * * * (Emphasis supplied.) Id. at 277, 33 S.Ct. at 354.

It should be mentioned at this point that, regarding the political status of Puerto Rico before 1952, the Supreme Court decided in Downes v. Bidwell, 182 U.S. 244, 21 S.Ct. 770, 45 L.Ed. 1088 (1901), that Puerto Rico was an unincorporated Territory of the United States.

Although the *Rosaly* case was decided in 1913, it is well to add that previously in 1901, the jurisdiction of the United States District Court for the District of Puerto Rico was modified. This modification, existing at the time of the decision, did not move the Supreme Court to a specific exception regarding it, but the Court may not have been aware of it. The amendment read:

That the jurisdiction of the District Court of the United States for Puerto Rico in civil cases shall, in addition to that conferred by the Act of April twelfth, nineteen hundred, extend to and embrace controversies where the parties, or either of them, are citizens of the United States, or citizens or subjects of a foreign State or States, wherein the matter in dispute exceeds, exclusive of interests or costs, the sum or value of one thousand dollars. (Act of Congress of March 2, 1901, c. 812, Sec. 3, 31 Stat. 953, 1 L.P.R.A. 3.)

The *Elkins* case had been resolved prior to the Supreme Court's consideration of the *Rosaly* case and thus its interpretation of the Organic Act was known to it. The amendment of 1901 did not in any manner state that the People of Puerto Rico was to be open to suit in the Federal Courts without its consent. This amendment related solely to the jurisdiction of the Federal Court in Puerto Rico regarding certain actions based on a special kind of diversity of citizenship.

No changes were made regarding the jurisdiction of the United States District Court for the District of Puerto Rico until the approval of the Organic Act of 1917 (Jones Act, as amended, March 2, 1917, c. 145, 39 Stat. 951, 1 L.P.R.A. 1, p. 54). Section 41 of that Act states the following:

The United States District Court for the District of Puerto Rico shall, in addition to its other jurisdiction, have jurisdiction for the naturalization of

aliens and Puerto Ricans, and, for this purpose, residence in Puerto Rico shall be counted in the same manner as residence elsewhere in the United States. Said District Court shall have jurisdiction of all controversies where all of the parties on either side of the controversy are citizens or subjects of a foreign State or States, or citizens of a State, Territory or District of the United States not domiciled in Puerto Rico, wherein the matter in dispute exceeds, exclusive of interest or cost, the sum or value of $3,000, and of all controversies where there is a separable controversy involving such jurisdictional amount and in which all of the parties on either side of such separable controversy are citizens or subjects of the character aforesaid * *. Id. Sec. 41.

The statute does not specify what that "other jurisdiction" is. However, the Court has functioned as an ordinary United States District Court and the matter has not been raised. The special jurisdiction granted to the district court does not in any manner specify that it is applicable to the sovereign Puerto Rico. The statute refers to problems arising in relation to diversity of citizenship and how they are to be treated. It does not at any time make Puerto Rico "a citizen", for the purposes of Federal jurisdiction.

Under the Puerto Rican Federal Relations Act of July 3, 1950, Section 41 of the Jones Act was continued in effect and is now a source of supplementary jurisdiction for the United States District Court for the District of Puerto Rico.—Public Law 600, July 3, 1950, Sec. 4, c. 446, 64 Stat. 319.

■ It has been held, and rightly so, that the Commonwealth of Puerto Rico possesses the sovereign immunity of a State. Krisel v. Duran, 258 F.Supp. 845, (S.D.N.Y.1966), 386 F.2d 179 (2nd Cir.), cert. den. 390 U.S. 1042, 88 S.Ct. 1635, 20 L.Ed.2d 303. To deny that the Commonwealth of Puerto Rico possesses sovereign immunity would be to assert that Commonwealth status, which was meant to achieve progress for the body politic of Puerto Rico, revoked the sovereignty which Puerto Rico achieved under the Foraker and Jones Acts, which is an absurdity.

Early in the relationship between Puerto Rico and the United States, questions arose concerning the juridical bonds existing among them. It was clear from the Treaty of Paris that Puerto Rico, as a ceded territory, was under the jurisdiction of the United States. Treaty of Paris, Article II, 1 L.P.R.A., p. 18. Yet, the Treaty itself did not serve the purpose of making Puerto Rico into an integral part of the United States. Puerto Rico became a territory of the United States, though not an incorporated one. De Lima v. Bidwell, 182 U.S. 1, 21 S.Ct. 743, 45 L.Ed. 1041 (1901). And this territory was not incorporated into the United States. Downes v. Bidwell, 182 U.S. 244, 21 S.Ct. 770, 45 L.Ed. 1088 (1901). Hence, Puerto Rico was characterized as an unincorporated territory appurtenant to the United States. It was the concurring opinion of Justice White in the *Downes* case that became the rule of the Court.

■ Under the Federal Constitution, the United States can acquire territories like any other sovereign; yet its treaty making power does not mean that by the mere cession, the new territories become a domestic part of the United States *ex proprio vigore*. Formal incorporation requires that Congress take specific action on the matter, as was pointed out by Justice White in his concurring opinion:

> When the various treaties by which foreign territory has been acquired are considered in the light of the circumstances which surrounded them, it becomes to my mind clearly established that the treaty-making power was always deemed to be devoid of authority to incorporate territory into the United States without the assent, express or implied, of Congress, and that no question to the contrary has ever been even mooted. Id. at 319, 21 S.Ct. at 799.

█ It follows that where a treaty contains no conditions for incorporation and, above all, where it not only has no such conditions but expressly provides to the contrary, as does the Treaty of Paris of 1898 at Article IX, incorporation does not arise until in the wisdom of Congress, it is deemed that the territory has reached that state where it is proper that it should enter into, and form a part of, the American family as an incorporated territory. Downes v. Bidwell, Id. at 339, 21 S.Ct. 770.

Whether the Island of Puerto Rico was incorporated or not into the United States, the Island came under the sovereignty of the United States. As such, Congress could grant the Island whatever sovereignty it deemed proper. Constitution of the United States, Article IV, Section 3, Clause 2. In keeping with this Constitutional authority, Congress approved in 1900, and again in 1917, organic acts which organized the Territory of Puerto Rico, but did not incorporate it into the United States. Balzac v. People of Porto Rico, 258 U.S. 298, 42 S.Ct. 343, 66 L.Ed. 627 (1922). The Supreme Court of the United States further said:

> We need not dwell on another consideration which requires us not lightly to infer, from acts thus easily explained on other grounds, an intention to incorporate in the Union these distant ocean communities of a different origin and language from those of our continental people. Incorporation has always been a step, and an important one, leading to statehood. Without the slightest degree, intimating an opinion as to the wisdom of such policy, for that is not our province, it is reasonable to assume that, when such a step is taken, it will be begun and taken by Congress deliberately, and with a clear declaration of purpose, and not left a matter of mere inference or construction. Id. at 311, 42 S.Ct. at 348.

Congress has not taken or accorded with Puerto Rico any step in which a deliberate and clear manner has, expressly or impliedly, declared the purpose of incorporating Puerto Rico into the United States. Steps were taken both by Congress and the People of Puerto Rico between 1950 and 1952 which led to the adoption of a Constitution by the People of Puerto Rico, which was later accepted by Congress. Status of Puerto Rico: Report of the United States-Puerto Rico Commission on the Status of Puerto Rico.—August 1966, Washington, D. C., pp. 11–14. The purpose of P.L. 600 was to allow the People of Puerto Rico to draft their own Constitution. Governor Muñoz in Hearings, Committee on Interior and Insular Affairs, United States Senate, 81st Congress, 2d Session, March 13, 1950, pp. 8, et seq. Under the Act of July 3, 1950, Public Law 600, 64 Stat. 319, 48 U.S.C. § 731b et seq., the People of Puerto Rico, subject to their approval, were invested with powers of government not usually characteristic of, and far more ample than, the powers of sovereignty exerciseable by citizens of a territory. Under that statute, the People of Puerto Rico were allowed to decide exclusively upon the number of branches of government, the extent and powers of each branch, the method of election and appointment of its officers, the duration of their terms, and the division of power as between each branch, limited only to maintaining always a republican form of government.

As stated in Americana of Puerto Rico, Inc. v. Kaplus, 368 F.2d 431 (3rd Cir. 1966):

> There can be no doubt that as a matter of political and legal theory, and practical effect, Puerto Rico enjoys a very different status from that of a totally organized but unincorporated territory, as it formerly was. The government of the Commonwealth derives its powers not alone from the consent of Congress, but also from the consent of the people of Puerto Rico. Id. at 435.

█ Whatever the actual status of Puerto Rico may be in all of its details, its present status is certainly not that of a State of the Union; nor is it that of a Territory, unincorporated or incorporat-

ed into the Union preparatory to statehood. Guerrido v. Alcoa Steamship Co., Inc., 234 F.2d 349 (1st Cir. 1956). Thus, it has happened that legal conclusions regarding the Commonwealth of Puerto Rico have varied from one extreme to the other. Americana of Puerto Rico, Inc. v. Kaplus, supra; Mora v. Mejías, 206 F.2d 377 (1st Cir. 1953); Cosentino v. International Longshoremen's Association, etc., 126 F.Supp. 420 (D.C.P.R. 1954). Public Law 600 did not abridge what sovereign powers Puerto Rico had been granted under the Foraker and Jones Acts, but rather continued them and, if anything, amplified them. Puerto Rico has neither been incorporated into the United States nor been made a State of the Union nor an independent republic. The Commonwealth of Puerto Rico is a body politic which has received, through a compact with the Congress of the United States, full sovereignty over its internal affairs in such a manner as to preclude a unilateral revocation, on the part of Congress, of that recognition of powers.

There can be no question that under the Foraker Act and the Jones Act, and more so under the Federal Relations Act, the Government of Puerto Rico is sovereign and has at least the same attributes of sovereignty as any other fully organized Territory or State. The general rule is that a State is not deemed to be a citizen within the meaning of diversity of citizenship for jurisdictional purposes in the federal courts. The cases supporting this proposition are very numerous. See: 147 A.L.R. 786, 787. The reason for this springs from the very concept of sovereignty itself, which limits the power of the individual citizen to sue the sovereign to only those cases where the sovereign has agreed that he may be sued.

■ The immunity of the sovereign to be sued in the manner aforementioned is intrinsically necessary to the orderly conduct of government. This is especially so in a democratic society such as ours where it is the people themselves who are the sovereign and where they themselves may determine through their institutions to what exent they, as a sovereign will be liable to individual citizens. If it were otherwise, the immunity of the sovereign from being sued in certain situations could easily be circumvented by bringing suit in the federal courts. To obtain this it would suffice to move to another state, territory or foreign country, for the sole purpose of granting jurisdiction to the federal courts. This was made clear as to the states of the Union by the XI Amendment. But, even if that amendment did not exist, or if it were not applicable to Puerto Rico, the result would be the same as it is an intrinsic attribute of sovereignty. As Justice Holmes stated:

> As the ground is thus logical and practical, the doctrine [of sovereign immunity] is not confined to powers that are sovereign in the full sense of juridical theory, but naturally is extended to those that, in actual administration, originate and change at their will the law of contract and property, from which persons within the jurisdiction derive their rights. A suit presupposes that the defendants are subject to the law invoked. Of course, it cannot be maintained unless they are so. But that is not the case with a territory of the United States, because the territory itself is the fountain from which rights ordinarily flow. It is true that Congress might intervene, just as, in the case of a state, the Constitution does, and the power that can alter the Constitution might. But the rights that exist are not created by Congress or the Constitution, except to the extent of certain limitations of power. * * * Kawananakoa v. Polyblank, 205 U.S. 349, 353–354, 27 S.Ct. 526, 527, 51 L.Ed. 834 (1907).

An interpretation of 48 U.S.C. § 863 which would permit a non-resident, whether plaintiff or defendant, to file or remove controversies in the United States District Court of Puerto Rico would be *ipso facto* destructive of any semblance of sovereignty which the government of the Commonwealth of Puerto Rico might have under the flag of the United States, unless it is made a con-

dition *sine qua non* that the government give its consent to be so sued. Such consent has not been given.

The Commonwealth of Puerto Rico has given its consent to be sued in a manner restricted and in accordance with the Act on Claims and Suits Against the Commonwealth, Act No. 104 of June 29, 1955, as amended by Act No. 111 of June 30, 1965, 32 L.P.R.A. 3077 et seq. This Act provides that the Commonwealth may be sued *before the Court of First Instance of Puerto Rico and only for the specific causes of action therein set forth.*—Act No. 104, Sec. 1. Nowhere in the Act does it appear that the Commonwealth may be sued in the Federal Court or in any other court.

Plaintiffs in this case, however, contend that the Attorney General for the Commonwealth of Puerto Rico has waived the Commonwealth's immunity from suit. They point out that the Commonwealth failed to raise the defense at the beginning of the proceedings. Let us analyze this. I believe the Attorney General was not obliged to enter this defense at the inception of the case, since at that time the Commonwealth of Puerto Rico was not a party thereto. In the early and intermediate stages of the proceedings, plaintiffs merely sought a declaratory judgment construing the rights of the plaintiffs and the Manager of the State Insurance Fund. It was not until the case was remanded from the Circuit Court that plaintiffs prayed for the refund of the moneys illegally collected, a relief which does affect, not the Manager, but the Commonwealth of Puerto Rico. In addition, the Court notes that the Commonwealth still has not been made a party defendant. Under these circumstances, the Attorney General's defense of sovereign immunity was not tardy and the motion filed in prosecution thereof was timely. Furthermore, the Attorney General's failure to invoke sovereign immunity does not constitute a waiver by the Commonwealth, for such an omission cannot, of itself, constitute the requisite consent of the state. Missis-

sippi River Fuel Corporation v. Cocreham, 382 F.2d 929, 932 (5th Cir. 1967).

Plaintiffs direct the Court's attention to a stipulation signed by the Attorney General on September 1, 1965, in which he admitted that the Court had jurisdiction to entertain the action. Since the Commonwealth was not a party thereto, nor was a remedy sought against it, such a stipulation does not bind it. But, conceding, for the sake of argument, that the Attorney General stipulated for the Commonwealth as a party, such a stipulation was unauthorized. The Workmen's Accident Compensation Act vests the jurisdiction to review the orders or decisions of the Manager of the State Insurance Fund, exclusively in the Industrial Commission of Puerto Rico.—11 L.P.R.A. 12. Not even the tribunals of the Commonwealth have original jurisdiction to take cognizance of controversies arising from the application or construction of the Workmen's Accident Compensation Act. In Wirshing y Compañía v. Buscaglia, Treas., 64 P.R.R. 346 (1945) at page 353, the Supreme Court of Puerto Rico, in construing the Workmen's Accident Compensation Act, summarized this point in the following manner:

> Where the act, as in the case of our statute, prescribes the procedure to be followed by the workmen, as well as by the employees, for the review of the orders or decisions of the Manager of the Fund and of the decisions rendered by the Industrial Commission, such remedy is exclusive and neither the workmen nor the employees may invoke the original jurisdiction of the ordinary tribunals for the determination of their disputes:

I am bound by this interpretation of the Workman's Accident Compensation Act by the Supreme Court of Puerto Rico. United States v. Cocreham, 247 F.Supp. 731 (E.D.La.1965).

In view of the aforementioned circumstances, this Court concludes, as a matter of law, that a stipulation by the Attorney General in the case at bar conceding ju-

risdiction to this Court concerning the Commonwealth of Puerto Rico would be unauthorized by statute. Puerto Rico's Workmen's Accident Compensation Act indicates a policy prohibiting state consent to suit in *one particular case* in the absence of a general consent to suit in similar causes of action. Ford Motor Co. v. Department of Treasury, etc., supra.

Plaintiffs call the Court's attention to the opinion in Richardson v. Fajardo Sugar Co., 241 U.S. 44, 36 S.Ct. 476, 60 L.Ed. 879 (1916). In that case the Supreme Court of the United States said that any right of Puerto Rico to invoke immunity from suit without its consent to defeat the jurisdiction of a federal court of an action against the Treasurer of Puerto Rico to recover tax wrongfully assessed was lost, where the Treasurer, appearing by the Attorney General of Puerto Rico, made full answer to the original complaint. I hold that this case follows the doctrine of the line of cases stemming from Gunter v. Atlantic Coast Line R. Co., supra, which it cites as authority. In *Ford*, the Supreme Court stated that in *Gunter* "the state's submission to the court was authorized by statute not by the unauthorized consent of an official." 323 U.S. 459, 470, 65 S.Ct. 347, 353. In our particular case, submission to the jurisdiction of the Court was not authorized by statute. The Attorney General of the Commonwealth of Puerto Rico was without power to waive the Commonwealth's sovereign immunity. To hold otherwise would entail disruption of a detailed procedure prescribed by the Legislature of Puerto Rico in the Workmen's Accident Compensation Act.

People of Porto Rico v. Ramos, 232 U.S. 627, 34 S.Ct. 461, 58 L.Ed. 763 (1914), cited by the plaintiffs as authority, is not applicable to the facts of the present case. The Commonwealth of Puerto Rico through its Legislature has provided for exclusive jurisdiction over the decisions and determinations of the Manager on the Industrial Commission of Puerto Rico. Wirshing y Compañía v. Buscaglia, Treas., supra. The Attorney General lacks the power to alter the procedure prescribed by the Legislature in the Workmen's Accident Compensation Act.

Plaintiffs also cite People of Porto Rico v. Emmanuel, 235 U.S. 251, 35 S.Ct. 33, 59 L.Ed. 215 (1914), in support of their contention of waiver of sovereign immunity. The ruling in this decision does not apply to the present case because in it the Attorney General was not barred from consenting to jurisdiction by virtue of Sections 1803 and 1804 of the Civil Code of Puerto Rico of 1902, cited by the Court. The clear provisions of the Workmen's Accident Compensation Act providing for exclusive jurisdiction in the Industrial Commission negates a similar conclusion in the case at bar.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction over the parties to enjoin defendant, the Manager of the State Insurance Fund, from collecting premiums in accordance with the decision of Alcoa Steamship Co., Inc. v. Vélez, 376 F.2d 521 (1st Cir. 1967).

2. The Court lacks jurisdiction to order the refund of the premiums collected by the Manager of the State Insurance Fund for in this sense the Commonwealth of Puerto Rico is the real party in interest and is entitled to invoke its sovereign immunity from suit.

For such reasons, it is:

## ORDERED, ADJUDGED AND DECREED

1. That the defendant's motion for relief of judgment pertaining to judgment of March 5, 1968 of this Court, permanently enjoining defendant from collecting insurance premiums to cover workmen's compensation accidents sustained by the seamen employed by said plaintiffs while working in the navigable waters of the Commonwealth of Puerto Rico, shall and is hereby denied.

2. Defendant's motion for relief from judgment as pertaining to refund of the

amounts allowed by the judgment of March 5, 1968, shall be, and is hereby granted, and said judgment, except as modified herein, is vacated.

Appendix A.—

## IN THE SUPERIOR COURT OF PUERTO RICO
### BAYAMON PART

VIRGINIA ROBLES ALVAREZ
Plaintiff

vs.

STATE INSURANCE FUND, THE SECRETARY OF LABOR
Defendants

CIVIL NO. CS–66–1793

On:

DAMAGES

———◆———

FINDINGS AND CONCLUSIONS OF FACT, CONCLUSIONS OF LAW AND JUDGMENT

### FINDINGS OF FACT

On June 17, 1966, Virginia Robles Alvarez filed a complaint against the State Insurance Fund and the Secretary of Labor, summoning only the Manager of the State Insurance Fund on June 29, 1966.

On July 22, 1966, the defendant answered the complaint filed on June 17, 1966.

On June 29, 1966, the plaintiff filed a motion requesting permission to file an amended complaint which was granted, and on August 1, 1966, the plaintiff filed the Amended Complaint, in which the Secretary of Labor of Puerto Rico was summoned.

On August 17, 1966, the defendant answered the Amended Complaint of August 1, 1966.

After these facts the parties served requests for interrogatories and admissions, which were answered by both parties.

On August 29, 1967, the defendant filed a Motion requesting permission to amend his answer of August 17, 1966. With said motion he enclosed the Amended Answer raising the two defenses that follow:

3) That the Court lacks jurisdiction.

4) That the State Insurance Fund and the Secretary of Labor do not have legal standing and, therefore, cannot sue or be sued.

On September 1, 1967, the plaintiff files a motion to Oppose the Amended Answer alleging the following grounds:

"1. On August 29 part the defendant filed an amended answer raising special defenses that he had not raised before and which are understood to have been waived.

2. That in addition to the preceeding the action to be taken is not to allow the filing of said amended answer inasmuch as he waited for the prescriptive period to elapse, for the case to be set for trial and, after having answered the complaint in the name of the State Insurance Fund and the Secretary of Labor, he files the the amended answer raising (the point of) the lack of legal standing of said defendants. Notice should be taken, however, that he appears once more in the very amended answer in the name of "the defendant", who, as alleged, has no legal standing to be sued, yet he has it to appear in the proceedings."

The case having been called for trial on September 7, 1967, the defendant's attorney requested that the defenses transcribed in fact sixth should be considered ground for a Motion to Dismiss, which was granted by the Court.

## CONCLUSIONS OF FACT

In this case only points of law are raised.

## CONCLUSIONS OF LAW

The State Insurance Fund was created by the Workmen's Accident Compensation Act, No. 45, of April 18, 1935. Article 6 of said law, 11 L.P.R.A., Section 8, provides the following:

"The rendering of compensation service to workmen and employees shall be in charge of the following organizations:

(a) The office of the Manager of the State Fund, which is hereby created in the Department of Labor.

\*   \*   \*   \*   \*   \* "

Under the Reorganization Plan No. 3, of 1950, Article 4, Section 4(a), provides that:

"The Office of the Manager of the State Insurance Fund is transferred to the Department of Labor, to function under the direction and supervision of the Commissioner of Labor."

It is clear, then, that according to the legal provisions just mentioned the State Insurance Fund is an *administrative agency* attached to the Department of Labor and part of the general structure of the Commonwealth of Puerto Rico.

In the aforesaid Article 6 of the Workmen's Accident Compensation Act all duties and functions of the Office of the Manager of the State Insurance Fund are listed, and the capacity to sue and to be sued is not listed among them. However, Article 31 (11 L.P.R.A. Section 32) of said law provides afterwards one exception to the duties and functions listed in Article 6. Such exception is clearly established in the second paragraph of Article 31 when it states:

"When an injured workman or employee, or his beneficiaries in case of death, may be entitled to institute an action for damages against a third person in cases where the State Insurance Fund, in accordance with the terms of this chapter, is obliged to compensate in any manner or to furnish treatment, the Manager of the State Insurance Fund *shall subrogate himself* in the rights of the workman or employee or of his beneficiaries, *and may institute proceedings against such third person* in the name of the injured workman or employee, or of his beneficiaries, within the ninety (90) days following the date on which the decision of the case becomes final and executory, and any sum which as a result of the action, or by virtue of a judicial or extrajudicial compromise, may be obtained in excess of the expenses incurred in the case, shall be delivered to the injured workman or employee or to his beneficiaries entitled thereto."

According to the legal provisions stated, there is no doubt that the State Insurance Fund may not be sued and it may sue only in subrogation cases. It is to be resolved now whether the Secretary of Labor may be sued.

The Organic Act of the Department of Labor of Puerto Rico, April 14, 1931, No. 15, provides in Articles 3, 4, 5, 7 and 13, the powers of the Secretary of Labor (Title 3 of L.P.R.A., Sections 306, 307, 308, 310 and 313). The capacity of the Secretary of Labor to be sued in actions for damages does not appear in any such articles. Nor the Workmen's Accident Compensation Act authorizes to sue the Secretary of Labor in such cases as the State Insurance Fund may be involved.

The State Insurance Fund being part of the Department of Labor, and the Secretary of Labor being the Director of one of the Executive Departments of the Commonwealth of Puerto Rico,[1] both without legal standing to be sued for damages, the suit should have been

1. See the Constitution of the Commonwealth of Puerto Rico, Article I, Section 2, and Article 4, Section 6.

instituted against the Commonwealth of Puerto Rico, and likewise, the Secretary of Justice should have been summoned in compliance with the provisions of Rule 4.4, paragraphs (f) and (g) of the Puerto Rico Civil Procedure, and the provisions in Act No. 104, of June, 1955, Art. 5 (32 L.P.R.A. Section 3080, 1964 Supplement). Only in this manner may this Court obtain jurisdiction.[2]

Since the plaintiffs did not follow the aforesaid legal provisions, and on the contrary, the ones sued and summoned were the State Insurance Fund and the Secretary of Labor, both without any legal standing to sue or be sued, the complaint is dismissed.

CERTIFIED

to be a true and correct TRANSLATION from its original

*VICTOR M. MELENDEZ*
Official Court Interpreter and Translator
UNITED STATES DISTRICT COURT
for the district of Puerto Rico

Appendix B.—

## IN THE SUPREME COURT OF PUERTO RICO

Virginia Robles Alvarez,
　　Petitioner – appellant
　　　　vs.
State Insurance Fund, the
Secretary of Labor,

　　Defendants – appellees

R–67–325　　　　　　Revision

Division composed of Mr. Chief Justice Perez Pimentel, and Mr. Justice Blanco Lugo, Mr. Justice Rigau, and Mr. Justice Ramirez Bages

### JUDGMENT

San Juan, Puerto Rico, January 24, 1968.

To the preceding motion for Revision, denied.

It was so ordered and decreed by the Court as witnesses the signature of the Chief Justice.

Luis Negrón Fernandez
Chief Justice

I certify:

Joaquín Berrios
Secretary

CERTIFIED

to be a true and correct TRANSLATION from its original

*VICTOR M. MELENDEZ*
Official Court Interpreter and Translator
UNITED STATES DISTRICT COURT
for the district of Puerto Rico

2. And an action cannot be successfully maintained against an agency unless it has capacity to be sued.

2 Moore's Fed.Practice, Section 429, pages 1201 and 1202.